LATHAM & WATKINS LLP
  Katherine A. Lauer (Bar No. 138010)
    *katherine.lauer@lw.com*
  Jason M. Ohta (Bar No. 211107)
    *jason.ohta@lw.com*
  Amy E. Hargreaves (Bar No. 266255)
    *amy.hargreaves@lw.com*
  12670 High Bluff Drive
  San Diego, CA 92130
  Telephone: (858) 523-5400
  Facsimile: (858) 523-5450

*Attorneys for Defendants Sutter Health, Sutter Valley Hospitals, Sutter Valley Medical Foundation, Sutter Bay Hospitals and Sutter Bay Medical Foundation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF CALIFORNIA *ex rel.* LAURIE M. HANVEY,<br><br>　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>SUTTER HEALTH, *et al.*,<br><br>　　　　　　　　Defendants. | Case No. 4:14-cv-04100-KAW<br><br>**DEFENDANTS SUTTER HEALTH, SUTTER VALLEY HOSPITALS, SUTTER VALLEY MEDICAL FOUNDATION, SUTTER BAY HOSPITALS AND SUTTER BAY MEDICAL FOUNDATION'S NOTICE OF MOTION AND MOTION TO DISMISS RELATOR'S SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: September 16, 2021<br>Time: 1:30 p.m.<br>Ctrm: TBD<br>Judge: Hon. Kandis A. Westmore |

LATHAM & WATKINS LLP
ATTORNEYS AT LAW

## NOTICE OF MOTION AND MOTION TO DISMISS

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 16, 2021 at 1:30 p.m., or as soon thereafter as the parties may be heard, before the Honorable Kandis A. Westmore, Magistrate Judge, United States District Court for the Northern District of California, in the Oakland Courthouse, Courtroom 4, 1301 Clay Street, Oakland, California 94612, Defendants Sutter Health, Sutter Valley Hospitals, Sutter Valley Medical Foundation, Sutter Bay Hospitals and Sutter Bay Medical Foundation ("Sutter Defendants") will and hereby do move this Court for an order dismissing Relator Laurie Hanvey's ("Relator") Second Amended Complaint (Dkt. No. 133). This motion is brought on grounds that: (1) Relator fails to plead with particularity violations of the False Claims Act; (2) Relator fails to plead with particularity violations of the Anti-Kickback Statute as to arrangements between Sutter Defendants and Defendants Sutter Medical Group, Bay Area Surgical Specialists Medical Group, and California Emergency Physicians Medical Group; and (3) Relator fails to plead with particularity violations of the Stark Law.

Sutter Defendants' Motion is based on this Notice of Motion and Motion to Dismiss, the following Memorandum of Points and Authorities, all pleadings and papers in this action, and any oral argument of counsel.

Sutter Defendants seek an order pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) dismissing Relator's Second Amended Complaint in its entirety for failure to state a claim upon which relief can be granted.

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................. 1

II. BACKGROUND ................................................................................................. 2

III. LEGAL STANDARD........................................................................................... 3

IV. ARGUMENT ...................................................................................................... 5

    A. Relator Fails to Plead Her FCA Claims with Particularity ..................................... 5

        1. Relator Fails to Allege with Particularity the Role of Each Defendant in the Alleged Fraud ............................................ 5

        2. Relator Fails to Allege with Particularity the Claims Allegedly Submitted by Any Sutter Defendant ......................................... 7

        3. Relator Fails to Allege with Particularity a Fraudulent Scheme that Connects the Defendant Entities ............................................ 8

        4. Relator's Conspiracy Counts Fail as a Matter of Law ............................. 10

    B. Relator Fails to Allege Violations of the AKS as to Arrangements Between Sutter Defendants and Defendants SMG, BASS and CEPMG GP........................................................................................... 12

        1. Relator Fails to Allege An Arrangement for Payment of Remuneration in Exchange for Referrals................................................. 12

            a) SMG Arrangements with SMCS ................................................. 12

            b) BASS Arrangements With Alta Bates and Eden ........................ 14

            c) CEPMG GP Arrangements with MHLB ..................................... 16

                (1) Mid-level Practitioner ED Coverage ............................. 17

                (2) Disproportionate Share Subsidy ..................................... 18

                (3) Stacking........................................................................... 18

        2. Relator Fails to Allege Intent to Induce Referrals ................................... 19

    C. Relator Fails to Plead Her Claims Regarding Stark Law Violations by Defendants ......................................................................................... 20

        1. Failure to Allege Referral of Designated Health Services by East Bay Cardiac, BASS or CEP ............................................................. 21

        2. Failure to Allege a Financial Relationship as to Sac Cardio .................. 21

1            a)     Failure to Allege a Direct Financial Relationship ....................... 21

2            b)     Failure to Allege an Indirect Relationship ................................. 22

3       3.     Failure to Allege a Financial Relationship as to East Bay
Cardiac ...................................................................................................... 23

4.     Failure to Allege a Financial Relationship as to BASS .......................... 24

5.     Failure to Allege Scienter for Stark Law Claims as to
BASS and CEPMG GP ............................................................................ 24

V.     CONCLUSION ................................................................................................... 25

## CASES

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)......................................................................................................3, 4

*United States ex rel. Bartlett v. Ashcroft,*
39 F. Supp. 3d 656 (W.D. Pa. 2014).................................................................................25

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)............................................................................................................3

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.,*
637 F.3d 1047 (9th Cir. 2011) ...........................................................................................4

*United States ex rel. Chin v. CVS Pharm., Inc.,*
No. CV 09-1293 PSG PJWx, 2017 WL 4174416 (C.D. Cal. Aug. 15, 2017)....................8

*Decker v. GlenFed, Inc.,*
42 F.3d 1541 (9th Cir. 1994) ...........................................................................................25

*Destfino v. Reiswig,*
630 F.3d 952 (9th Cir. 2011) .............................................................................................5

*Epstein v. Wash. Energy Co.,*
83 F.3d 1136 (9th Cir. 1996) .............................................................................................4

*Hanlester Network v. Shalala,*
51 F.3d 1390 (9th Cir. 1995) ...........................................................................................12

*United States ex. rel. Jacobs v. CDS, P.A.,*
No. 4:14-CV-00301-BLW, 2015 WL 5698395 (D. Idaho Sept. 28, 2015) ......................20

*John Russo Indus. Sheetmetal, Inc. v. City of L.A. Dep't of Airports,*
240 Cal. Rptr. 3d 217 (Cal. Ct. App. 2018) ......................................................................4

*Johnson v. Deutsche Bank Nat. Tr. Co.,*
*2013 WL 3810715* (N.D. Tex. July 23, 2013)...................................................................20

*Jones-McNamara v. Holzer Health Sys.,*
630 F. App'x 394 (6th Cir. 2015) .....................................................................................19

*United States ex rel. Jorgenson v. Alan Ritchey, Inc.,*
2007 WL 1287932 (W.D. Wash. Apr. 27, 2007).................................................................9

*Knudsen v. Sprint Commun. Co.,*
C13-04476 CRB, 2016 WL 4548924 (N.D. Cal. Sept. 1, 2016) ........................................9

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

*United States ex rel. Kosenske v. Carlisle HMA, Inc.*,
    554 F.3d 88 (3d Cir. 2009)...........................................................................20

*Lesnik v. Eisenmann SE*,
    No. 16-CV-01120-LHK, 2018 WL 4700342 (N.D. Cal. Oct. 1, 2018)............10, 11

*United States ex rel. Marion v. Heald College, LLC*,
    No. 5:12-cv-02067-PSG, 2015 WL 4512843 (N.D. Cal. July 24, 2015)..........10, 11

*United States ex rel. Modglin v. DJO Glob. Inc.*,
    48 F. Supp. 3d 1362 (C.D. Cal. 2014), *aff'd sub nom. United States v. DJO
    Glob., Inc.*, 678 F. App'x 594 (9th Cir. 2017) ...............................................7

*Moore v. Kayport Package Exp., Inc.*,
    885 F.2d 531 (9th Cir. 1989) .......................................................................9

*United States ex rel. Nicholson v. MedCom Carolinas*,
    2020 WL 1245374 (M.D.N.C. Mar. 16, 2020).............................................19

*Odom v. Microsoft Corp.*,
    486 F.3d 541 (9th Cir. 2007) .......................................................................8

*United States ex rel. Osheroff v. Tenet*,
    2012 WL 2871264 (S.D. Fla. July 12, 2012)...............................................19

*United States ex rel. Perry v. Hooker Creek Asphalt and Paving, LLC*,
    565 Fed. Appx. 669 (9th Cir. 2014)............................................................8

*United States ex rel. Serrano v. Oaks Diagnostics, Inc.*,
    568 F. Supp. 2d 1136 (C.D. Cal. 2008) .......................................................8

*United States ex rel. Singh v. Bradford Reg'l Med. Ctr.*,
    752 F. Supp. 2d 602 (W.D. Pa. 2010)....................................................22, 23

*State of Cal. v. Altus Fin.*
    116 P.3d 1175 (Cal. 2005) ..........................................................................4

*Steckman v. Hart Brewing, Inc.*,
    143 F.3d 1293 (9th Cir. 1998) .................................................................6, 22

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) .......................................................................7

*United States v. Chang*,
    No. CV-13-3772-DMG, 2017 WL 10544289, Slip op. (C.D. Cal. July 25,
    2017) ...............................................................................................4, 12

*United States v. Corinthian Coll. et al.*,
    655 F.3d 984 (9th Cir. 2011) .......................................................................5

*Frazier ex rel. United States v. Iasis Healthcare Corp.*,
    392 F. App'x 535 (9th Cir. 2010) ...........................................................................4

*Ebeid ex rel. United States v. Lungwitz*,
    616 F.3d 993 (9th Cir. 2010) .........................................................................4, 21

*United States v. McClatchey*,
    217 F.3d 823 (10th Cir. 2000) .............................................................................19

*United States v. McKesson Corp.*,
    No. 19-CV-02233-DMR, 2020 WL 4805034, Slip op. (N.D. Cal. Aug. 18,
    2020) ....................................................................................................................10

*United States v. United Healthcare Ins.*,
    848 F.3d 1161 (9th Cir. 2016) ...............................................................................4

*United States v. Vandewater Int'l Inc.*,
    No. 2:17-CV-04393-RGK-KS, 2019 WL 6917927, Slip op. (C.D. Cal. Sept. 3,
    2019) ....................................................................................................................10

**STATUTES**

31 U.S.C.
    § 3729(a)(1)(A) ............................................................................................ *passim*
    § 3729(a)(1)(C) .......................................................................................................2
    § 3729(a)(1)(G) ......................................................................................................2
    § 3729(b)(1) .........................................................................................................25

42 U.S.C.
    § 1320a-7b(b) ...................................................................................................2, 12
    § 1320a-8 .............................................................................................................12
    § 1395nn ...........................................................................................................2, 6
    § 1395nn(b) .........................................................................................................20

Cal. Gov't Code
    § 12651(a)(1) ............................................................................................... *passim*
    § 12651(a)(3) ..........................................................................................................2
    § 12651(a)(7) ..........................................................................................................2

**RULES**

Fed. R. Civ. P. 9(b) ....................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6)..............................................................................................1, 3

# REGULATIONS

42 C.F.R.
§ 411.354(c)(2) ................................................................................................22, 23
§ 411.354(c)(3)(ii)(A) ................................................................................................23
§ 411.357(p) ................................................................................................23

# OTHER AUTHORITIES

CENTERS FOR MEDICARE AND MEDICAID SERVICES, PHYSICIAN SELF-REFERRAL,
    https://www.cms.gov/Medicare/Fraud-and-Abuse/PhysicianSelfReferral (last
    visited June 9, 2021) ................................................................................................20

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Relator Laurie M. Hanvey ("Relator"), who was employed for only two years as a Compliance Officer at a single Sutter hospital (Sutter Medical Center Sacramento ("SMCS")), filed her Second Amended Complaint ("SAC") alleging that arrangements with six physician groups at five different Sutter hospitals violated the False Claims Act ("FCA") beginning July 1, 2006. Relator has no personal knowledge regarding any Sutter affiliate other than SMCS, or for any time period outside of her limited employment, which is why she is unable to provide the facts necessary to resuscitate her deficient allegations. She instead tries to obfuscate this lack of detail with vague allegations ascribing activities to "SUTTER HEALTH." The heightened pleading standards of Federal Rule of Civil Procedure 9(b) require more than this. Relator must plead with specificity the role of *each Defendant* in the alleged fraud, or otherwise allege the basis or theory under which each Defendant is liable for that fraud. Relator's failure to provide those specific allegations speaks to her fundamental lack of knowledge regarding any Sutter entity outside of the single hospital at which she worked from December 2012 to December 2014. Relator therefore is unable to plead with particularity her claims under the FCA.

Relator is also unable to allege additional facts sufficient to address the bases on which the Court dismissed claims in her First Amended Complaint ("FAC") regarding arrangements between (1) Sutter Medical Group ("SMG") and SMCS; (2) Bay Area Surgical Specialists Medical Group ("BASS") and Alta Bates Summit Medical Center ("Alta Bates") and Eden Medical Center ("Eden"); and (3) California Emergency Physicians Medical Group ("CEPMG GP") and Memorial Hospital Los Banos ("MHLB"). Similarly, Relator's attempt to correct her deficient Stark Law claims makes painfully clear that she lacks meaningful knowledge regarding any aspect of their arrangements outside of the contracts themselves—which in some cases belie the allegations in the SAC. For all of these reasons, Relator's SAC must be dismissed under Federal Rules of Civil Procedure 12(b)(6) and 9(b).[1]

---

[1] Relator has failed to properly state her allegations, despite the opportunities afforded by a lengthy Government investigation and having had multiple opportunities to amend her original Complaint.

## II. **BACKGROUND**

On September 10, 2014, Relator filed a *qui tam* action in the United States District Court for the Northern District of California against ten Sutter entities and nine physician groups alleging eight causes of action: four under the federal FCA, 31 U.S.C. § 3729(a)(1)(A)-(C), (G); and four under the California False Claims Act ("CFCA"), Cal. Gov't Code § 12651(a)(1)-(3), (7). *See* Dkt. No. 1. Relator alleged that the arrangements between these Sutter entities and physician groups violated the physician self-referral law, 42 U.S.C. § 1395nn (the "Stark Law"), the Anti-Kickback Statute ("AKS"), *id.* § 1320a-7b(b), and related state laws, giving rise to liability under the FCA and CFCA.

In October 2019, following a nearly five-year investigation, the United States and Relator entered into a Settlement Agreement with Sutter Health and SMCS that covered alleged Stark Law violations arising from arrangements with Sacramento Cardiovascular Surgeons Medical Group ("Sac Cardio") during the limited time period between September 1, 2012 and September 30, 2014. *See* SAC ¶ 148. On November 13, 2019, the United States and the State of California filed a notice with the Court stating that they would not intervene as to any claims against any Sutter entities, *see* United States' and State of California's Notice Regarding Election to Intervene, Dkt. No. 43, and the United States and Relator subsequently filed a Stipulation of Partial Dismissal regarding the conduct covered by the Settlement Agreement. *See* Dkt. No. 44.

On January 21, 2020, Relator filed a FAC containing allegations regarding five Sutter-related entities (Defendants Sutter Health, Sutter Valley Hospitals, Sutter Valley Medical Foundation, Sutter Bay Hospitals and Sutter Bay Medical Foundation) (collectively, "Sutter Defendants") and eight physician groups ("Physician Group Defendants").[2] *See* Dkt. No. 46. Maintaining the majority of the factual allegations from her initial Complaint, Relator added new claims that Sutter Defendants knowingly retained overpayments in violation of the FCA that

---

Relator will not be able to do so if permitted to amend again, and therefore the SAC should be dismissed with prejudice.

[2] Relator dropped her allegations against one of the physician group defendants in the original Complaint, East Bay Perinatal Medical Associates.

exceeded the settlement amount during the same period, and also knowingly retained overpayments outside of that period due to the same conduct. FAC ¶ 147.

On June 25, 2020, Sutter Defendants and Defendants SMG, East Bay Cardiac, CEPMG GP, BASS and Stephen K. Liu, M.D., filed separate motions to dismiss. *See* Dkt. Nos. 74–79. On January 27, 2021, the Court issued an order requiring supplemental briefing on the motions to dismiss by Sutter Defendants and CEPMG GP, *see* Dkt. No. 128, and joint supplemental briefs were filed by Relator and those parties on February 9, 2021, and February 16, 2021, *see* Dkt. Nos. 129, 130.

On March 17, 2021, the Court issued an order granting in part and denying in part Defendants' Motions to Dismiss. *See* Dkt. No. 131 ("Order"). The Court found that Relator had failed to allege fraud as to the relationships between Sutter Defendants and Defendants SMG, BASS and CEPMG GP, and that Relator had failed to allege a Stark Law violation as to the relationship between Sutter Defendants and Defendants Sac Cardio and East Bay Cardiac. *Id.* Based on these findings, the Court dismissed Relator's claims, without prejudice, with the exception of "(1) claims related to the AKS as to the relationship between Defendant Sutter Health and [Sac Cardio], (2) claims related to the AKS as to the relationship between Defendant Sutter Health and Defendant East Bay Cardiac, and (3) claims related to the relationship between Defendant Sutter Health and Defendant Liu." *Id.* at 36. On May 3, 2021, Relator filed her SAC. *See* Dkt. No. 133.

## III. <u>LEGAL STANDARD</u>

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint that fails to "state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Claims are not plausible if there is an "obvious alternative explanation." *Id.* at 567. "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW

at 557) (internal citations omitted).  While well-pleaded facts are accepted as true for the purpose of deciding a motion to dismiss, "[t]hreadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate.  *Id.*; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.") (internal citation omitted).

A claim under the FCA must not be only plausible, it must also be pled with particularity.  *See* Fed. R. Civ. P. 9(b); *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054-55 (9th Cir. 2011).  The plaintiff therefore "must allege 'the who, what, when, where, and how of the misconduct charged' including what is false or misleading about a statement, and why it is false."  *United States v. United Healthcare Ins.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)).  It is insufficient for a relator to allege only "details of a scheme to submit false claims"; she also must "identify representative examples of false claims" or, at the very least, provide "reliable indicia that lead to a strong inference that claims were actually submitted."  *Ebeid*, 616 F.3d at 998–99 (citation omitted).  For FCA claims premised on alleged AKS or Stark Law violations, the relator must plead the particular details of the alleged violations.  *See Frazier ex rel. United States v. Iasis Healthcare Corp.*, 392 F. App'x 535, 537 (9th Cir. 2010); *United States v. Chang,* No. CV-13-3772-DMG (MRWx), 2017 WL 10544289, Slip op. at *11 (C.D. Cal. July 25, 2017).

It is recognized that the CFCA is "patterned on similar federal legislation and it is appropriate to look to precedent construing the equivalent federal act."  *John Russo Indus. Sheetmetal, Inc. v. City of L.A. Dep't of Airports*, 240 Cal. Rptr. 3d 217, 224 (Cal. Ct. App. 2018) (quoting *State of Cal. v. Altus Fin.* 116 P.3d 1175, 1184 (Cal. 2005)).  Therefore, any failure to state a claim under the FCA will similarly foreclose claims alleged under the CFCA.

# IV.    ARGUMENT

## A.    Relator Fails to Plead Her FCA Claims with Particularity

### 1.    Relator Fails to Allege with Particularity the Role of Each Defendant in the Alleged Fraud

Not one of Relator's causes of action, nor her descriptions thereof, specify the responsible defendant in the alleged fraudulent scheme. "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum identify the role of each defendant in the alleged fraudulent scheme." *United States v. Corinthian Coll. et al.*, 655 F.3d 984, 997-98 (9th Cir. 2011) (internal citation omitted) (holding that relator's complaint failed the heightened pleading requirements of Rule 9(b) because assertions that defendants monitored and approved the illegal recruiter compensation packages at issue were insufficient to set forth each defendant's participation in the alleged scheme) (reversing on other grounds). The Ninth Circuit has routinely held that Rule 9(b) "does not allow a complaint to . . . lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant." *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (internal citations omitted) (affirming district court's dismissal of complaint with prejudice because complaint "grouped multiple defendants together and failed to set out which of the defendants made which of the fraudulent statements/conduct").

Despite clear precedent in this area, the SAC nonetheless lumps together all of the Sutter Defendants as a singular "SUTTER HEALTH." For example, in each of her descriptions of the complained-of arrangements, Relator asserts that "SUTTER HEALTH" presented or caused to be presented false claims to federal healthcare payors for reimbursement. SAC ¶¶ 138-41, ¶ 151 (SAC Cardio), ¶ 157 (Dr. Roberts), ¶ 169 (East Bay Cardiac), ¶ 182 (BASS), ¶ 196 (Dr. Liu), ¶ 214 (CEPMG GP). But the SAC does not even allege facts to show that "SUTTER HEALTH" is an entity capable of acting as a singular unit. Moreover, the SAC does not attempt to assert the relationship between the Sutter Defendants, including whether any Sutter Defendant has any controlling or management relationship with any other Sutter Defendant.

Rather than specifically stating the roles that each Sutter Defendant allegedly played in each relationship with each physician or group, Relator names "SUTTER HEALTH" as the actor

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

in all of her allegations. But particularly with respect to the Stark Law, which entity is a party to a financial arrangement and submits a claim matters very much. The Stark Law evaluates financial arrangements between specific physicians and specific entities, and prohibits referrals only to those entities with which physicians have financial arrangements that are not compliant with an applicable exception. *See* 42 U.S.C. § 1395nn. Relator in fact *never* alleges specific referrals of designated health services by specific physicians to specific hospitals with which the physicians have agreements, much less that any specific hospital submitted a claim to Medicare for a referral that somebody submitting claims on behalf of the hospital knew was a prohibited referral. *See, e.g.,* allegations as to SAC Cardio, ¶¶ 101–151 ("Those bills are false claims to Medicare and provide representative examples of SUTTER HEALTH's submission of false claims to Government Payers. SUTTER HEALTH used the same billing process to submit claims to all Government Payers, not just to Medicare." (¶ 138)); allegations as to Dr. David K. Roberts, ¶¶ 152–158; allegations as to East Bay Cardiac ¶¶ 159–170; allegations as to BASS, ¶¶ 171–185; allegations as to Dr. Stephen K. Liu, ¶¶ 186–197; allegations as to CEPMG GP, ¶¶ 198–217. By generalizing the actor of each allegation as "SUTTER HEALTH," Relator has not pled the submission of claims or underlying Stark Law violations with sufficient particularity.

Not only is Relator's group pleading insufficient for the purposes of pleading fraud, it is expressly contradicted by Relator's own exhibits to the SAC. Each of the agreements about which Relator complains were entered into only by the particular hospital or foundation and provider group involved, and not any other Sutter Defendant. For example, all of the physician assistant agreements, medical directorship agreements and call coverage agreements with Sac Cardio were entered into by SCMS and Sac Cardio, and *no* other defendants. SAC Exs. 1, 2, 4-6, 8, 9, 12, 14-16. Where a complainant's description of the facts contradicts her own exhibits, the court need not accept the complainant's description of the facts as true. *See Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1295–96 (9th Cir. 1998) (The Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint.") (internal citations omitted). Because Relator's allegations that "SUTTER HEALTH" entered into

LATHAM & WATKINS LLP
ATTORNEYS AT LAW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

each agreement contradict her own exhibits, this Court cannot take the allegation that "SUTTER HEALTH" entered into these agreements as fact.

Further, as reflected in the SAC's exhibits, Defendant Sutter Health was party to *none* of the agreements outlined in the SAC. Relator has not alleged which particular Sutter entity entered into any of the complained-of agreements, nor does she allege that Defendant Sutter Health has or had control over any of the other individual Sutter Defendants nor of the agreements. In fact, Relator includes no allegations that connect Defendant Sutter Health to the purported fraud at all. Merely acknowledging an individual defendant's tangential role in an arrangement is insufficient to allege its participation in the alleged fraudulent scheme. *See Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) (finding dismissal proper as to two defendants, when complaint alleged only that defendants knew of false statements that other defendants made and that defendants acted as agents of other defendants in carrying out the scheme) (reversing on other grounds).

Because Relator's SAC inappropriately lumps all of the Sutter Defendants together, without specifying the role that any Sutter Defendant played in the alleged fraud, in contradiction to Relator's exhibits, and without any allegation of control or relationship between Defendant Sutter Health and the individual hospitals and foundations, Relator fails to allege with particularity her FCA and CFCA causes of action.

### 2. Relator Fails to Allege with Particularity the Claims Allegedly Submitted by Any Sutter Defendant

A second deficiency dooms Relator's SAC. With the exception of three paragraphs as to claims for reimbursement related to the alleged relations with Sac Cardio (SAC ¶¶ 139–41), Relator makes *no* allegations of any claims submitted to federal payors related to any of the other relationships—not with Dr. Roberts, East Bay Cardiac, BASS, Dr. Liu or CEPMG GP. Rule 9(b) requires that each element of the fraud be stated with particularity, including that defendants submitted claims for governmental reimbursement. *See United States ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d 1362, 1407 (C.D. Cal. 2014), *aff'd sub nom. United States v. DJO Glob., Inc.*, 678 F. App'x 594 (9th Cir. 2017) (holding that relators "have not adequately pled reliable

indicia leading to a strong inference that defendants actually submitted false claims to each of the federal programs"). Nowhere in the SAC or its exhibits does Relator do so as to Defendants Sutter Health, Sutter Valley Medical Foundation, Sutter Bay Hospitals or Sutter Bay Medical Foundation. Further, even Relator's "example" claims do not allege submission of claims by a Sutter facility. *See, e.g.* ¶ 139 ("Relator has direct knowledge that SUTTER HEALTH submitted an electronic claim for the hospital inpatient services to Medicare for Redacted Patient #1, and that claim was a false claim under the FCA.").

Relator cannot ask this Court to assume that each Sutter Defendant submitted claims to the federal and California governments for prohibited referrals, nor can she ask this Court to rely on three examples involving just one Defendant when making such an assumption as to all Sutter Defendants. *See United States ex rel. Chin v. CVS Pharm., Inc*., No. CV 09-1293 PSG PJWx, 2017 WL 4174416, at *8 (C.D. Cal. Aug. 15, 2017) (dismissing FCA claims because Rule 9(b) does not permit claims based on implications of other alleged claims); *United States ex rel. Serrano v. Oaks Diagnostics, Inc.*, 568 F. Supp. 2d 1136, 1143 (C.D. Cal. 2008) (dismissing FCA claims because "[t]he general allegations that all claims submitted during an almost four year period were fraudulently submitted is insufficient particularity to satisfy the 9(b) pleading standard") (citing *Odom v. Microsoft Corp.,* 486 F.3d 541, 553 (9th Cir. 2007)).

### 3. Relator Fails to Allege with Particularity a Fraudulent Scheme that Connects the Defendant Entities

Relator's failure to assert particular facts as to each of the Sutter Defendants and claims cannot be saved by an allegation claiming a "scheme" encompassing all allegations. Relator repeatedly refers to a "scheme" to defraud without any support, or even a general description of such a scheme.

It is not enough to allege in a conclusory fashion that a purported fraud extended to multiple facilities by way of a "scheme" without pleading the basis for such an allegation with particularity. *See United States ex rel. Perry v. Hooker Creek Asphalt and Paving, LLC*, 565 Fed. Appx. 669, 670 (9th Cir. 2014) (holding that FCA complaint did not meet Rule 9(b) requirements of

specifically pleading a fraudulent scheme because relator's "representative examples" spanning more than 200 contracts described "a wide variety of alleged violations, [so] they do not serve to allege with particularity the 'who, what, when, where and how' of a consistent course of fraudulent conduct.") (citations omitted) (reversing on other grounds). Listing a number of unrelated events without connecting them is insufficient. *See United States ex rel. Jorgenson v. Alan Ritchey, Inc.*, 2007 WL 1287932, at *3 (W.D. Wash. Apr. 27, 2007) (dismissing allegations regarding fraud at company locations other than the one about which the relator asserted insider knowledge because "alleged fraudulent activity at one plant does not constitute an allegation for a different plant").

Here, even after three attempts at drafting her complaint, Relator has not articulated who precisely was involved in the "scheme," what it entailed, or when and where it occurred. Relator has made no attempt to allege facts that might demonstrate a scheme, such as consistent patterns of conduct, repeat players, top-down direction, or coordination and communication across the arrangements. *See Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) (dismissing fraud claims because complaint did not specify the time, place, and manner in which the scheme itself was carried out, rather than the individual fraudulent acts).

Rather, each arrangement alleged by Relator is unique to that facility and that medical group, and does not support an inference of a "scheme" by "SUTTER HEALTH." Relator's SAC describes a wide variety of arrangements with several entities, including SMCS, Alta Bates, Eden and MHLB. She has not alleged that those facilities, which are the parties to the relevant agreements, communicated or coordinated with each other, or with Defendant Sutter Health, in a manner that would support a unified scheme among the many Sutter Defendants. Nor does she describe any individuals involved in multiple arrangements across facilities, or any direction from Defendant Sutter Health to any facility in connection with the allegedly fraudulent arrangements.

Without particularized allegations to support her treatment of a series of varied and unique arrangements as a "scheme," (or as described above, allegations describing with particularity the fraudulent behavior assigned to each Sutter Defendant), Relator has failed to allege fraud against any Sutter Defendant. *See Knudsen v. Sprint Commun. Co.*, C13-04476 CRB, 2016 WL 4548924,

at *7 (N.D. Cal. Sept. 1, 2016) (dismissing complaint with prejudice because relator "failed to allege the specifics of such a scheme with plausibility"). Nor can Relator assert a "scheme" in order to cure the fact, as established in the SAC, that she only has factual knowledge of one hospital—SMCS, and has stated no basis upon which to assert personal knowledge as to any other Sutter Defendant. *See* SAC at ¶ 14; *United States v. McKesson Corp.*, No. 19-CV-02233-DMR, 2020 WL 4805034, Slip op. at *6 (N.D. Cal. Aug. 18, 2020) (dismissing FCA complaint on specificity grounds because allegations did "not explain the basis or source of Relators' knowledge").

Relator has not described a fraudulent scheme; rather, she has baselessly alleged that "SUTTER HEALTH" entered into certain arrangements with the Physician Group Defendants. Without allegations connecting the arrangements, which the SAC's exhibits demonstrate were entered into by individual Sutter facilities, Relator cannot rely on a vague reference to a "scheme" by "SUTTER HEALTH" to satisfy her burden to allege each element as to each allegedly fraudulent arrangement with particularity.

### 4. Relator's Conspiracy Counts Fail as a Matter of Law

In similar fashion, Relator has also failed to allege with particularity both of her claims of conspiracy under the FCA and CFCA. "To state a claim for conspiracy under the FCA, a plaintiff must show that (1) the defendant agreed with one or more persons to get a false or fraudulent claim allowed or paid by the United States; (2) one or more conspirators performed any act to effect the object of the conspiracy; and (3) the United States suffered damages as a result." *United States v. Vandewater Int'l Inc.*, No. 2:17-CV-04393-RGK-KS, 2019 WL 6917927, Slip op. at *5 (C.D. Cal. Sept. 3, 2019) (citation omitted).

This district, like many courts across the circuits, has held that FCA conspiracy claims are subject to the heightened pleading requirements of Rule 9(b). *United States ex rel. Marion v. Heald College, LLC*, No. 5:12-cv-02067-PSG, 2015 WL 4512843, at *4 (N.D. Cal. July 24, 2015) (collecting cases). To satisfy Rule 9(b) in the context of FCA conspiracy claims, the plaintiff "must allege the existence of an agreement between the defendants to violate the FCA." *Lesnik v.*

1 | *Eisenmann SE*, No. 16-CV-01120-LHK, 2018 WL 4700342, at *8 (N.D. Cal. Oct. 1, 2018) (citing

2 | *Marion*, 2015 WL 4512843, at *4). After three attempts, Relator still has not done so.

3 |     Using only a string of legal conclusions, Relator asserts that "SUTTER HEALTH and

4 | PHYSICIAN ENTITIES conspired with one another to get false and fraudulent claims allowed

5 | and paid by Government Payers and to retain the resulting overpayments, in violation of the FCA

6 | and CFCA. SUTTER HEALTH and PHYSICIAN ENTITIES also conspired to pay (and receive)

7 | unlawful, excessive compensation and remuneration in violation of the Stark Statute and the AKS.

8 | SUTTER HEALTH and PHYSICIAN ENTITIES acted in a concerted fashion to defraud

9 | Government Payers, and acted with one another to keep the facts necessary to investigate the fraud

10 | and the damages caused by the fraud away from the United States and the State of California.

11 | Accordingly, the SUTTER HEALTH and PHYSICIAN ENTITIES violated the FCA." SAC ¶

12 | 224. Relator's assertions that the Sutter Defendants and Physician Group Defendants conspired

13 | to receive and retain payments for false claims, exchanged remuneration in violation of the Stark

14 | Law and AKS, and kept facts away from the United States and California are mere recitations of

15 | legal conclusions. Relator otherwise does not address the alleged conspiracy in the SAC.

16 |     The SAC does not even assert that any named Defendant made an agreement to violate the

17 | FCA, let alone any factual allegations about the time, place, or specific content of agreement as

18 | required by Rule 9(b). *See Marion*, 2015 WL 4512843, at *4-5 (granting motion to dismiss

19 | alleging that defendants conspired to violate the FCA because complaint alleged no facts to support

20 | the assertion that defendants had reached an agreement between themselves). Similarly, Relator

21 | has not alleged any agreement between any of the Sutter Defendants and Physician Group

22 | Defendants, nor has she stated any facts that would support an inference that such an agreement

23 | existed. *See Lesnik*, 2018 WL 4700342, at *8 (concluding conspiracy complaint "does not actually

24 | allege that any agreement existed, which [] compels dismissal of the FCA claim" as to certain

25 | defendants).

26

27

28

Because Relator failed to plead with sufficient particularity the Sutter Defendants' involvement in the alleged fraudulent scheme, the Court must dismiss her conspiracy counts against the Sutter Defendants.

**B.** **Relator Fails to Allege Violations of the AKS as to Arrangements Between Sutter Defendants and Defendants SMG, BASS and CEPMG GP**

**1.** **Relator Fails to Allege An Arrangement for Payment of Remuneration in Exchange for Referrals**

The AKS imposes liability on any person who knowingly and willfully offers or pays remuneration to induce or reward referrals of items or services reimbursable by a federal health care program. *See* 42 U.S.C. §§ 1320a-7b(b), 1320a-8. To establish an AKS violation, a relator must allege with specificity that the defendant "knowingly and willfully offered or paid remuneration to induce referrals of program-related business." *Hanlester Network v. Shalala*, 51 F.3d 1390, 1398 (9th Cir. 1995); *see* 42 U.S.C. § 1320a-7b(b). When the AKS is a predicate for FCA claims, the elements of the alleged AKS violation must be alleged with particularity. *See Chang,* 2017 WL 10544289, at *10-*14. Here, Relator has failed to allege an AKS violation as to arrangements between Sutter Defendants and Defendants SMG, BASS and CEPMG GP because she has not alleged with particularity that Sutter Defendants unlawfully offered or provided remuneration to those Physician Group Defendants in order to induce referrals.[3]

*a)* *SMG Arrangements with SMCS*

Previously, the Court found that Relator failed to allege a fraud regarding arrangements between SMG and SMCS for medical director services provided by Dr. David K. Roberts. Order at 24. The Court concluded that "[o]ne cannot plausibly infer from [Relator's allegations] that Dr. Roberts was, in fact, unable to maintain a busy medical practice at the same time he was acting as a medical director," observing that Relator had failed to allege the number of hours Dr. Roberts worked as a medical director at SMCS, and further, that Relator did not allege that a medical directorship was in place during the year in which he allegedly billed Medicare in excess of

---

[3] As noted above, Relator also fails to accurately allege which of the Sutter Defendants engaged in which activity, and does not describe any relevant acts by any of the Sutter Defendants (including Defendant Sutter Health) beyond the agreements that, as the exhibits indicate, were entered into and executed by the relevant facility.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW

$200,000. *Id.* In her SAC, Relator again alleges a fraudulent arrangement between SMG and SMCS. *See* SAC ¶ 152–158. Apparently reading the Court's opinion to literally require her to allege hours and billings, she has added to her SAC that Dr. Roberts "claimed over 130 hours of medical director services in each month during the period from December 2013 through June 2014," and included annual Medicare billing information for 2012–2015. *See* SAC ¶ 153; Exs. 26–27. What Relator has still failed to do is allege how these facts support an AKS allegation.

First, Relator's allegations do not support her claim that the agreement was a "sham" under which Dr. Roberts was not expected to perform the services described. SAC ¶ 154. The time reports Relator has filed as Exhibit 26 (which cover only two months of a multi-year arrangement), show that Dr. Roberts performed the work for which he was reimbursed by Sutter—undermining Relator's argument that Dr. Roberts did not provide services and that the agreements were "shams." In fact, as Dr. Roberts could not be paid for more than 87 hours per month (*see* Ex. 25, 3.a) and 121 hours of work per month (*see* Ex. 24, 3.a) in 2013 and 2014, respectively, Relator's allegations that Dr. Roberts worked over 130 hours during select months indicate that Dr. Roberts in fact provided *extra* work for SMCS for which he could not be reimbursed under the terms of the agreement—facts hardly supportive of a kickback claim.

Second, Relator does not provide any basis for her allegation that it was unlawful, inappropriate, or not possible for Dr. Roberts to bill Medicare for several hundred thousand dollars a year while working the hours she alleges he worked as a medical director, or that the total amount earned by Dr. Roberts in those years was unusual or suspect in any way. Notably, Relator has not alleged that the arrangement was unusual on its face as to the amount paid per hour or the number of hours contemplated; she also has not alleged that the hourly or total payment contemplated under the agreement was not in line with the fair market value for the services. And the exhibits filed in support of Relator's SAC show that as Dr. Roberts' medical director responsibilities increased, his Medicare billing decreased. For example, according to Exhibit 27, in 2013, when Dr. Roberts' Medical Director agreement limited his payments to 87 hours per month, he received $331,187 in reimbursement from Medicare. In 2014, when his Medical Director agreement

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

contemplated up to 121 hours of work per month, a forty percent increase from his prior maximum hours, he received $192,124 in Medicare reimbursement, a **forty percent** decrease. Moreover, because Relator alleges Dr. Roberts' monthly medical director hours for only one month in 2013 and six months in 2014, *see* SAC ¶ 153, and Exhibit 27 does not provide Medicare billing on a monthly basis, she cannot establish that in any given month Dr. Roberts provided medical director services *and* Medicare billable services that were excessive or unreasonable.

Despite the additional allegations intended to cure Relator's deficient pleadings as to Dr. Roberts, she still has not sufficiently pled the payment of unlawful remuneration with the intent to induce referrals, and thus again has failed to state a claim with regard to arrangements between SMG and SMCS.

<i>b)</i>      <i>BASS Arrangements With Alta Bates and Eden</i>

The Court also determined that Relator's FAC failed to adequately allege fraud as to call coverage arrangements between BASS and Alta Bates or Eden. Order at 25–26. The Court found that Relator's "conclusory allegations [we]re not sufficient," as Relator failed to "allege facts suggesting that Defendant BASS was compensated for on-call services that were not provided" and further, "[t]he fact that Defendant BASS was paid for both coverage and the services provided is, without more, insufficient to allege fraud." *Id.* at 26. Now, searching for a new theory on which to premise her fraud allegations, Relator characterizes the arrangements between BASS and Alta Bates and Eden as "exclusive" and "preferential" arrangements from which she alleges that an inference of intent to induce referrals can be drawn. *E.g.,* SAC ¶ 174–75. Relator provides no support for a claim that exclusivity alone is sufficient to allege an AKS violation, nor does she establish that the agreements at issue were exclusive or preferential.

Relator attempts to rely on a purported rule that an exclusive on-call arrangement necessarily violates the AKS; however, she provides no legal support for this assertion. Relator cites to a 2012 HHS-OIG Advisory Opinion to support her contention that "payments by hospitals for on-call coverage can be misused to entice physicians to join or remain on the hospital's staff or to generate additional business for the hospital." SAC ¶ 175 (citing HHS-OIG Advisory

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

Opinion 12-15, p. 7).  In this advisory opinion, expressly limited to those specific facts, OIG found that an on-call arrangement contained safeguards sufficient to reduce the risk that the remuneration was intended to induce federal healthcare program referrals and the OIG would not impose sanctions where: (1) the payment was fair market value and commercially reasonable; (2) the payment was determined annually, and did not take into account the volume or value of referrals; (3) the physicians provided actual and necessary services; (4) all relevant specialists on hospital staff were offered unrestricted call; and (5) costs did not accrue to Federal health care programs. Without any further legal authority, Relator appears to suggest that because the fourth factor is not present here, the arrangement at issue would violate the AKS.  The OIG Advisory Opinion establishes no such rule.  There is simply no authority for the proposition that the "exclusive" nature of an arrangement alone is sufficient to plead an AKS violation.

Furthermore, the agreements Relator claims are exclusive contain no such restrictive provisions.  The Alta Bates agreement (Ex. 32) does not specify that it is an exclusive on-call arrangement that precludes the hospital from entering into other on-call arrangements for vascular coverage; rather, it simply indicates that the hospital wishes to ensure that, at a minimum, it has "adequate physician on-call coverage in its emergency departments."  Relator has provided no support for her claim that the hospital could not enter into other on-call arrangements for vascular coverage or dissuaded other physician groups from entering into on-call arrangements for vascular coverage.  In fact, Eden did enter into arrangements with two physician groups (BASS and East Bay Cardiac) for thoracic surgery call coverage (SAC ¶ 178), indicating that no such bar existed. There are many reasons why the facilities might have entered into only one or two call arrangements, such as availability of physician groups; however, intent to induce referrals is far from an obvious purpose for doing so, particularly without any support for such an allegation.

Relator also fails to identify any impropriety with the call coverage agreements themselves beyond their purported "exclusive" nature.  As in her FAC, she still does not "allege facts suggesting that Defendant BASS was compensated for on-call services that were not provided" (indeed, the timesheet Relator provides at Exhibit 34 indicates that the appropriate services were

provided in exchange for payment), nor does she explain why it is not "permissible" for Defendant BASS to bill for services despite being paid for on-call coverage.  Order at 26.  Relator also does not allege that the per diem is excessive for the service provided, and instead mischaracterizes the amounts paid to BASS under the relevant agreements.  Relator alleges that "[o]ver a full year, SUTTER HEALTH pays BASS a total of $474,500 ($650 x 2 x 365 days) for vascular surgery call coverage."  SAC ¶ 174.  The relevant contract (Exhibit 32) does not require BASS to cover *all* vascular shifts; the hospital merely pays a specified amount per 24-hour shift covered at either ($650) or both ($1,200) facilities.  Relator's statement is doubly flawed: when a physician covered both facilities, the payment would be $600 per facility, and BASS was not required to provide for coverage for all 365 days.  As Relator has not accurately alleged the total amount paid, she cannot assert that the amount was excessive.

### c) CEPMG GP Arrangements with MHLB

The Court also concluded in its Order that Relator failed to allege fraudulent behavior in connection with arrangements between CEPMG GP and MHLB for mid-level practitioner emergency department ("ED") coverage, medical director services and disproportionate share subsidies.  Order at 27–31.  As to mid-level practitioners, the Court found that Relator failed to explain why allowing mid-level practitioners to bill Medicare for services when they were paid for emergency department coverage constituted "double billing."  *Id*. at 30.  The Court also found that "Relator also d[id] not allege that allowing such billing is not standard practice, or that the hourly payment of $60.33 for mid-level practitioners should already cover medical services."  *Id*. Assessing Relator's allegations regarding disproportionate share subsidies, the Court found that Relator failed to explain why it was improper that Defendant CEPMG GP was not required to provide an accounting of services provided and that Relator did not "address nor explain whether coverage agreements typically do not prohibit physicians from providing services to rival hospitals."  *Id*. at 30–31.  Relator's SAC fails to correct these deficiencies.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW

(1)     Mid-level Practitioner ED Coverage

2          Relator still does not sufficiently allege that the hourly payment for mid-level ED coverage

3   contemplated in the agreements between CEPMG GP and MHLB was excessive, nor does she

4   provide any reason that those practitioners could not separately bill Medicare for professional

5   services provided.  She also does not allege that the mid-level practitioners did not provide the

6   services for which CEPMG GP billed the hospital for reimbursement.  Instead, she now alleges

7   that the arrangement violated the AKS because "SUTTER HEALTH provided a tangible financial

8   benefit to CEPMG GP by paying CEPMG GP the costs of the Mid-Level Practitioners, who

9   performed patient care services that are normally the responsibility of the physician or the

10  physician's staff."  SAC ¶ 205.  However, Relator fails to establish that the arrangement was

11  improper, or that MHLB paid the "costs" of the mid-level practitioners providing ED coverage.

12         First, the HHS-OIG advisory materials that Relator cites to support her allegation that the

13  conduct described violates the AKS are inapposite.  Relator cites generally a federal register notice

14  that "sets forth the 5 previously-developed Special Fraud Alerts issued directly to the health care

15  provider community by the HHS Office of Inspector General (OIG)."  SAC ¶ 205 (citing HHS-

16  OIG Special Fraud Alert: Arrangements for the Provision of Clinical Lab Services (Issued October

17  1994)).  The notice does not describe the conduct alleged in the complaint as violative of the AKS.

18  Relator also cites a 1998 HHS-OIG Advisory Opinion in which a pharmacy proposed to assign an

19  employed pharmacist to work in hospital transplant centers to provide pharmacy-related products

20  and services.  *Id.* (citing HHS-OIG Advisory Opinion 98-16 (Issued Nov. 3, 1998)).  Relator

21  provides no explanation as to how that unrelated question would apply in this context.

22          Second, Relator asserts without any basis that the agreements functioned to subsidize mid-

23  level practitioner support to CEPMG GP physicians, rather than to provide necessary coverage to

24  ensure the operation of the ED at MHLB.  *See* Ex. 41 (describing the purpose as to "ensure the

25  availability of experienced [mid-level practitioners] specializing In Emergency Medicine to meet

26  the needs of [the] Hospital").  Relator asserts that "CEPMG GP billed Medicare and Medicaid for

27  services rendered by the Mid-Level Practitioners, without having to bear the direct costs of the

28

Mid-Level Practitioners," SAC ¶ 205, suggesting that Sutter covered entire "cost" or salaries of the mid-level practitioners. But Relator does not allege the total salaries of these mid-level practitioners, and even if she did, the payments she describes clearly do not cover the "costs" of employing them. For example, Exhibit 43 indicates that in September 2011, one PA worked nine days in the ED and another worked 16, resulting in payments of $542.97 and $965.28, respectively, which could not conceivably cover the salaries for those individuals. Even to the extent that the amount paid by the hospital may have covered a portion of the mid-level practitioner "costs," Relator has not alleged that such an arrangement was unlawful or improper—for in fact, any arrangement in which a physician group is paid for services arguably covers a portion of the group's "costs."

(2)   Disproportionate Share Subsidy

As the Court found with regard to the FAC, "[w]hile Relator asserts that Defendant CEP was not required to provide an accounting, Relator does not explain why this is improper." Order at 30. Relator now attempts to provide that explanation by asserting that because states and hospitals are required to report, the lack of such a requirement in the arrangement between CEPMG GP and MHLB must indicate impropriety. *See* SAC ¶ 211. This is pure conjecture, and Relator is unable to identify any legal or regulatory basis for the assertion. Furthermore, the contract did provide a means by which the hospital could review collect patient data as needed for reporting requirements. CEPMG GP was required to "maintain and make available all necessary books, documents and records in order to assure that Hospital will be able to meet all requirements for participation and payment associated with public and private third party payment programs." *See* Ex. 41, Sec. 8.1. Therefore, the hospital had the right to obtain and review records from CEPMG GP as necessary for the hospital to comply with its auditing and reporting responsibilities.

(3)   Stacking

Finally, Relator alleges that because MHLB entered into arrangements with CEPMG GP for mid-level ED coverage, medical director services and disproportionate share subsidy, the arrangements were "stacked" in a manner such that the total amounts paid to CEPMG GP violated

the AKS. However, Relator has failed to allege that any of these agreements were unlawful or improper, nor has she alleged the total amount paid to CEPMG GP under these agreements, or why it was excessive. Thus, she has failed to allege any unlawful or improper "stacking."

### 2. Relator Fails to Allege Intent to Induce Referrals

In addition to Relator's failure to describe any arrangements by which a Sutter Defendant would pay unlawful remuneration to SMG, BASS or CEPMG GP in exchange for referrals, Relator has failed to allege that any arrangements entered into between Sutter Defendants and SMG, BASS and CEPMG GP were "intended to induce referrals." "[C]ourts widely agree that the gravamen of Medicare fraud is inducement." *Jones-McNamara v. Holzer Health Sys.*, 630 F. App'x 394, 400 (6th Cir. 2015) (internal quotation marks and citations omitted). For example, the court in *United States ex rel. Osheroff v. Tenet*, 2012 WL 2871264, at *8 (S.D. Fla. July 12, 2012), held that the relator's conclusory allegation that defendants intended to induce referrals was not sufficient; the relator would have had to allege a quid pro quo relationship or other facts suggesting the defendants offered the below-market rental rates in return for patient referrals. *Id.*

Here, Relator alleges no fact to suggest that any arrangement with SMG, BASS or CEPMG GP was entered into with "the intent to gain influence over the reason or judgment of a person making referral decisions." *United States v. McClatchey*, 217 F.3d 823, 834 (10th Cir. 2000). The factual allegations described above, which fall short of alleging the payment of remuneration in exchange for referrals, are not sufficient to support an inference of intent to induce referrals. And, while Relator includes various conclusory statements such as that "SUTTER HEALTH intended to induce referrals and rewarded Dr. Roberts for his referrals by paying excessive and commercially unreasonable compensation for Dr. Roberts' medical director services," SAC ¶ 156, these statements are nothing more than the bare recital of the statutory element without any "factual enhancement." *United States ex rel. Nicholson v. MedCom Carolinas*, 2020 WL 1245374, *12 (M.D.N.C. Mar. 16, 2020) (allegations that defendant attempted to "generate referrals" or sought to "induce referrals" were "threadbare recital[s]" of the statutory requirement and not factual allegations). Therefore, Relator has failed to plead the "intent" element of her AKS claims.

**C.** **Relator Fails to Plead Her Claims Regarding Stark Law Violations by Defendants**

In its prior Order, the Court dismissed Relator's Stark Law claims against all Defendants with the exception of Dr. Liu.[4]  *See, e.g.*, Order at 21, 25.  In her SAC, Relator attempts to correct her deficient claims by alleging that physicians providing services pursuant to the relevant contracts held ownership interests in the physicians' groups named in those contracts.  *See* SAC ¶ 3.  However, Relator's claims remain deficient for several reasons.  First, she fails to allege the referral of patients for the furnishing of designated health services in connection with arrangements with East Bay Cardiac, BASS and CEPMG GP.  Second, her pleadings as to Sac Cardio, East Bay Cardiac and BASS fall short of alleging the elements of a Stark Law violation during the time periods in which she alleges them.  Third, for Stark Law claims related to arrangements with BASS and CEPMG GP, Relator fails to establish the scienter element sufficient to render the underlying Stark Law claim a violation of the FCA.  Moreover, as the contracts establish a financial relationship only between the physician groups and the hospitals with which they contracted, Relator's Stark Law-based FCA claims for each arrangement are limited to the defendant entities listed as parties to those agreements.  The Court should dismiss Relator's FCA claims based on the Stark Law claims described below as deficient in their pleading.[5]

---

[4] Relator's Stark Law claims regarding arrangements with SMG, BASS and CEPMG GP were dismissed within the Court's broader conclusions that Relator failed to allege fraud as to those relationships.  *See* Order at 24, 26, 31.

[5] In addition, as a threshold matter, Relator has failed to plead a Stark Law violation because she has not alleged that no Stark Law exceptions apply.  A number of courts have determined that "proof of a Stark exception is an affirmative defense," and a motion to dismiss therefore cannot be granted on this basis.  *See, e.g., United States ex rel. Jacobs v. CDS, P.A.*, No. 4:14-CV-00301-BLW, 2015 WL 5698395, at *6 (D. Idaho Sept. 28, 2015) (internal citations omitted); *Johnson v. Deutsche Bank Nat. Tr. Co., 2013 WL 3810715*, at *8 (N.D. Tex. July 23, 2013); *United States ex rel. Kosenske v. Carlisle HMA, Inc.*, 554 F.3d 88, 95 (3d Cir. 2009).  However, it is undisputed that where a Stark Law exception applies, the Stark Law has not been violated.  *See* 42 U.S.C. § 1395nn(b) (listing "general exceptions to both ownership and compensation prohibitions" under which "[s]ubsection (a)(1) shall not apply"); Ctrs. for Medicare and Medicaid Servs., Physician Self-Referral, https://www.cms.gov/Medicare/Fraud-and-Abuse/PhysicianSelfReferral (last visited June 15, 2021) (stating that the Stark Law "[p]rohibits a physician from making referrals for certain [DHS] payable by Medicare to an entity with which he or she (or an immediate family member) has a financial relationship (ownership, investment, or compensation), ***unless an exception applies***") (emphasis added); *see also Jacobs*, 2015 WL 5698395, at *4 ("Stark prohibits doctors from referring patients to a hospital with which they have a financial relationship, unless an exception applies.") (citations omitted).  Therefore, this Court

**1.** **Failure to Allege Referral of Designated Health Services by East Bay Cardiac, BASS or CEP**

Relator fails to allege Stark Law violations by East Bay Cardiac, BASS and CEPMG GP because she has not alleged the referral of designated health services ("DHS") by the relevant physicians to the hospitals with which each physician had a financial arrangement. As explained above, each of the arrangements at issue represents a separate and distinct agreement between the facility and the medical group, and no allegations connect these arrangements or demonstrate any involvement above the facility level. Therefore, under Rule 9(b) pleading requirements, Relator must provide particularized allegations relating to the referral of DHS by East Bay Cardiac, BASS and CEPMG GP physicians to each relevant hospital with which the group had a financial relationship. *See Ebeid*, 616 F.3d at 1000 (finding allegations that "'unlawful referrals ... were made by physicians who were employed by and whose livelihood depended upon Lungwitz,'" which "lack[ed] any details or facts setting out the 'who, what, when, where, and how' of the 'financial relationship' or alleged referrals—[we]re insufficient under Rule 9(b)"). Here, Relator alleges no facts sufficient to establish the referral of DHS to the facilities contracting with East Bay Cardiac, BASS, and CEPMG GP, including that the physician groups or facilities even billed federal health programs for DHS—an unsurprising omission given that Relator did not work at these facilities and had no personal knowledge regarding their operations. Because Relator has failed to provide specific allegations regarding patient referral for the furnishing of DHS, she has not alleged a Stark Law violation as to arrangements between East Bay Cardiac and Alta Bates, BASS and Alta Bates or Eden, and CEPMG GP and MHLB.

**2.** **Failure to Allege a Financial Relationship as to Sac Cardio**

a) *Failure to Allege a Direct Financial Relationship*

With regard to the arrangements between Sac Cardio and SMCS, Relator does not sufficiently allege a Stark Law violation as to alleged referrals by Dr. Longoria prior to 2010, or

should depart from the non-binding case law on this issue, which allows plaintiffs to proceed past the motion to dismiss stage on the basis of claims that do not, on their face, allege any legal violation, and find that a Stark Law violation is pled only where Relator has alleged that no relevant Stark Law exception applies to an allegedly unlawful arrangement.

as to alleged referrals by Drs. Kincade and Ingram prior to 2012, because she fails to allege a direct financial relationship as to those physicians during those time periods. While Relator alleges that these physicians held ownership interests in Sac Cardio, those allegations are directly contradicted by the agreements between Sac Cardio and SMCS that Relator filed as exhibits to her SAC. *See Steckman,* 143 F.3d at 1295–96 ("The Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint") (citations omitted).

Relator alleges that Drs. Ingram, Kincade and Longoria hold ownership interests in Sac Cardio. SAC ¶ 3. However, the Medical Director Agreement for Dr. Longoria, submitted as Exhibit 12, states that as of Oct. 1, 2010, the medical group "employ[ed] James Longoria." Similarly, the Medical Director Agreements for Dr. Ingram, submitted as Exhibits 4 and 6, state that as of Sept. 1, 2010 and Sept. 1, 2012, the medical group "employ[ed] Michael T. Ingram." Finally, the Medical Director Agreements for Dr. Kincade, submitted as Exhibits 8 and 9, state that as of Sept. 1, 2010 and Sept. 1, 2012, the medical group "employ[ed] Robert Kincade." As Relator has provided no basis for her conclusory allegations that the three physicians were shareholders in Sac Cardio during the relevant period, and those allegations are belied by the medical director agreements, she has failed to allege a Stark Law violation as to Dr. Longoria *at least* prior to 2010, and as to Drs. Kincade and Ingram *at least* prior to 2012.

### b) Failure to Allege an Indirect Relationship

Relator does not sufficiently allege Stark Law violation claims prior to September 5, 2007 for the Physicians Assistants Agreements and the Medical Director Agreements between Sac Cardio and SMCS because she fails to allege an indirect relationship between SMCS and the Sac Cardio physicians performing services under agreements entered into prior to September 5, 2007. "Prior to December 4, 2007, the Stark regulations did not separately define 'direct compensation arrangement[.]'" *United States ex rel. Singh v. Bradford Reg'l Med. Ctr.*, 752 F. Supp. 2d 602, 618–19 (W.D. Pa. 2010) (citing 42 C.F.R. § 411.354(c)(2)). If "any remuneration was paid to a professional practice rather than to the doctor individually," then, a physician would not be implicated in a "direct compensation arrangement." *Id.* Therefore, "[t]he Stark regulations set

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

forth a grandfather clause providing that the 'stands in the shoes' provision '[n]eed not apply during the original term or current renewal term of an arrangement that satisfied the requirements of § 411.357(p) as of September 5, 2007.'" *Id.* at 619 (quoting 42 C.F.R. § 411.354(c)(3)(ii)(A)).

Relator alleges that "[b]eginning July 1, 2006, SUTTER HEALTH knowingly entered into a series of agreements with Defendant SAC CARDIO that provided free physician assistants to and for the direct benefit of SAC CARDIO, one purpose of which was to induce referrals from the SAC CARDIO physicians for inpatient and outpatient hospital services at SUTTER HEALTH." SAC ¶ 101. She also alleges that "beginning October 1, 2006, SUTTER HEALTH knowingly entered into a series of three stacked Medical Director Agreements with SAC CARDIO that paid SAC CARDIO up to a total of $318,264 annually for services allegedly performed by each of the SAC CARDIO Physicians as the 'Medical Director' of various services lines." SAC ¶ 108. For pre-September 5, 2007 claims, which preceded the "stand in the shoes" doctrine, Relator must allege that the elements of an indirect relationship are met. Those elements are: (1) the hospital and the physician are connected by an unbroken chain of entities with financial relationships between them; (2) the aggregate compensation received by the physician "varies with, or takes into account, the volume or value of referrals or other business generated by the referring physician" for the hospital; and (3) the hospital actually knows, recklessly disregards, or is deliberately ignorant, of the fact that the physician's compensation varies with or takes into account the volume or value of referrals. *See* 42 C.F.R. § 411.354(c)(2). Here, Relator has not alleged the second or third elements of an indirect compensation arrangement. Therefore, her FCA claims based on Stark Law violations in connection with arrangements between Sac Cardio and SMCS prior to September 5, 2007 should be dismissed.

### 3. Failure to Allege a Financial Relationship as to East Bay Cardiac

Relator does not sufficiently allege Stark Law violations regarding arrangements between East Bay Cardiac and Alta Bates prior to February 4, 2009 because she fails to allege an indirect relationship between Alta Bates and the East Bay Cardiac physicians performing services under the relevant agreement entered into prior to September 5, 2007. Relator alleges that "From June

1, 2007 and continuing through August 31, 2014, SUTTER HEALTH knowingly entered into a series of Administrative and Coverage Agreements" with Sac Cardio. SAC ¶ 160. According to the agreement filed as Exhibit 28, East Bay Cardiac entered into its first Administrative and Coverage Service Agreement ("Coverage Agreement") with Alta Bates on June 1, 2007; that agreement, which contemplated a three-year term, appears to have been operative until February 9, 2009, when the entities entered into a new Coverage Agreement. *See* Ex. 29. As explained above, for any agreements entered into prior to September 5, 2007, Relator cannot rely on an allegation that the physicians "stand in the shoes" of the medical group. For any allegations that precede the February 4, 2009, Relator was required to allege that an indirect relationship existed. Because she has failed to do so, Relator's Stark Law-based FCA claims regarding arrangements between East Bay Cardiac and Alta Bates prior to February 4, 2009 should be dismissed.

### 4. Failure to Allege a Financial Relationship as to BASS

For arrangements between BASS, Alta Bates and Eden, Relator has failed to allege Stark Law violations outside of the time period during which the two agreements submitted as exhibits operated. In her SAC, Relator has not alleged any specific duration of time in which the agreements allegedly operated (and thus, that a financial relationship existed). As an exhibit to her SAC, she has provided only a two-year contract commencing on November 1, 2011 (Exhibit 32) and a one-year contract commencing on July 1, 2011. To the extent Relator has alleged a financial relationship, she has only done so as to arrangements with BASS from July 1, 2011 to November 1, 2013, and any BASS claims outside of that time period should be dismissed.

### 5. Failure to Allege Scienter for Stark Law Claims as to BASS and CEPMG GP

Because the Stark Law is a strict liability statute, alleging a Stark violation alone is not sufficient to form the basis of an FCA claim. Rather, a plaintiff seeking to allege an FCA violation on the basis of an underlying Stark Law violation must separately allege (or provide allegations sufficient to support an inference of) the FCA "scienter" element. *See United States ex rel. Bartlett v. Ashcroft*, 39 F. Supp. 3d 656, 674 (W.D. Pa. 2014) ("Because the self-referral prohibition in the Stark Act does not contain the same scienter requirement as that of the FCA, a violation of the

Stark Act does not necessarily trigger liability under the FCA."). For FCA purposes, "scienter" requires that a defendant "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1). As this Court pointed out, "the Ninth Circuit has found that 'when a complaint alleges with particularity the circumstances constituting fraud, as required by [Rule 9(b)], then generally it will also have set forth facts from which an inference of scienter could be drawn.'" Order at 31 (quoting *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1546 (9th Cir. 1994)). The Court also noted that where fraudulent schemes are sufficiently pled, "plaintiffs may aver scienter generally." *Id.* (quoting *Decker*, 42 F.3d at 1546).

Here, Relator has failed to allege a fraud as to arrangements with BASS or CEPMG GP, and therefore her allegations do not support drawing an inference of scienter sufficient to render her Stark Law allegations a violation of the FCA. *See supra; see also* Order at 23–31 (dismissing Relator's Stark Law claims as to arrangements with BASS and CEPMG GP on the basis that Relator's FAC failed to allege fraud in connection with those arrangements). Further, Relator's SAC does not even "aver scienter generally" as to those arrangements by alleging that any individual submitting claims on behalf of the facilities at issue knew that the arrangements violated the Stark Law or acted with deliberate indifference as to or reckless disregard for whether the arrangements violated the Stark Law. As Relator has failed to allege FCA scienter as to these Stark Law claims, those claims must be dismissed.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, the Sutter Defendants respectfully request that the Court dismiss Relator's Second Amended Complaint in its entirety with prejudice.

Dated:  June 15, 2021                                     Respectfully submitted,

LATHAM & WATKINS LLP
By: */s/  Jason M. Ohta*
                Jason M. Ohta

*Attorneys for Sutter Defendants*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW