1
2
3
4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7    UNITED STATES OF AMERICA, et al.,        Case No.  14-cv-04100-KAW

8                      Plaintiffs,
                                              **ORDER GRANTING IN PART AND**
9           v.                                **DENYING IN PART MOTIONS TO**
                                              **DISMISS AND MOTION TO STRIKE**
10   SUTTER HEALTH, et al.,
                                              Re: Dkt. Nos. 142, 143, 144, 146
11                     Defendants.

12

13          Relator Laurie M. Hanvey filed the instant case against Defendants, asserting violations of

14   the federal False Claims Act and the California False Claims Act.  Relator alleges that Defendants

15   Sutter Health, Sutter Valley Hospitals, Sutter Valley Medical Foundation, Sutter Bay Hospitals,

16   and Sutter Bay Medical Foundation (collectively, "Sutter Health Entities") implemented a scheme

17   where they knowingly entered into compensation arrangements in violation of the Anti-Kickback

18   Statute ("AKS") and the Stark Law by paying or providing unlawful kickbacks, excessive

19   compensation, free employees, and other illegal incentives to physicians who refer patients to

20   Defendant Sutter Health.  (Second Amended Compl. ("SAC") ¶ 100(a).)  The Sutter Health

21   Entities allegedly entered into these agreements with Defendants Sutter Medical Group, East Bay

22   Cardia Surgery Center Medical Group ("East Bay Cardiac"), BASS Medical Group ("BASS"),

23   and Stephen K. Liu ("Liu"), as well as Sacramento Cardiovascular Surgeons Medical Group, Inc.

24   ("SCSMG") and California Emergency Physicians Medical Group ("CEP")[1] (collectively,

25   Physician Entities").

26          On March 17, 2021, the Court granted in part and denied in part Defendants' motions to

27

28   _____
     [1] SCSMG and CEP have been dismissed pursuant to settlement agreements.  (Dkt. Nos. 72, 136.)

dismiss. (Dismissal Order, Dkt. No. 131.) The Court found there were sufficient allegations of fraud with respect to: (1) claims related to the AKS as to the relationship between the Sutter Health Entities and SCSMG, (2) claims related to the AKS as to the relationship between the Sutter Health Entities and East Bay Cardiac, and (3) claims related to the relationship between the Sutter Health Entities and Liu. (*Id.* at 36.) The Court found that Relator had not adequately alleged fraud as to the relationships between the Sutter Health Entities and Sutter Medical Group, BASS, and CEP. (*Id.* at 23-26, 30-31.) The Court also found that Relator had failed to allege a Stark Law violation as to the relationships between the Sutter Health Entities and SCSMG and East Bay Cardiac because Relator had not alleged a direct compensation agreement. (*Id.* at 20-21, 25.)

On May 3, 2021, Relator filed the operative complaint. On June 15, 2021, the Sutter Health Entities, Sutter Medical Group, and BASS filed separate motions to dismiss.[2] (SMG Mot. to Dismiss, Dkt. No. 142; Sutter Health Mot. to Dismiss, Dkt. No. 144; BASS Mot. to Dismiss, Dkt. No. 146.) Sutter Medical Group also filed a motion to strike an exhibit and certain allegations from the complaint. (SMG Mot. to Strike, Dkt. No. 143.) On July 15, 2021, Relator filed a consolidated opposition to the motions to dismiss, as well as an opposition to the motion to strike. (Rel.'s Opp'n, Dkt. No. 156; Rel.'s Opp'n re Mot. to Strike, Dkt. No. 157.) On July 30, 2021, Defendants filed their replies.[3] (BASS Reply, Dkt. No. 158; Sutter Health Reply, Dkt. No. 159, SMG Reply, Dkt. No. 160.)

Having considered the parties' filings, the arguments made at the September 16, 2021 hearing, and the relevant legal authorities, the Court GRANTS IN PART and DENIES IN PART the Sutter Health Entities' motion to dismiss, DENIES Sutter Medical Group's motion to dismiss, GRANTS IN PART and DENIES IN PART Sutter Medical Group's motion to strike, and GRANTS BASS's motion to dismiss.

---

[2] Defendants East Bay Cardiac and Liu filed answers. (Dkt. Nos. 139, 147.)

[3] Sutter Medical Group also purportedly filed a reply as to the motion to strike, but the reply was identical to the motion to strike. (*See* Dkt. No. 161.)

United States District Court
Northern District of California

# I.   LEGAL STANDARD

## A.   Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted.  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate.  *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co*., 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.").  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . .  When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

If the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the

allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted).

**B.    Motion to Strike**

Federal Rule of Civil Procedure 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  "The purpose[] of a Rule 12(f) motion is to avoid spending time and money litigating spurious issues." *Barnes v. AT&T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010) (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)).  Motions to strike, however, "are generally disfavored because the motions may be used as delaying tactics and because of the strong policy favoring resolution of the merits." *Id.* (citation omitted).  Thus, "[b]efore a motion to strike is granted the court must be convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed." *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005).  As with a motion to dismiss, "the court must view the pleading under attack in the light most favorable to the pleader." *Id.* (citation omitted).

## II.    DISCUSSION

The Court previously stated the facts of the case in great detail, and will therefore describe the facts as necessary in its analysis.

**A.    Specific Role of Sutter Health Entities**

The Sutter Health Entities assert that Relator has failed to allege with particularity the specific role of each Sutter Health Entity in the alleged fraud.  (Sutter Health Mot. to Dismiss at 5.)  Instead, the operative complaint usually refers to the Sutter Health Entities collectively as "SUTTER HEALTH," such that "SUTTER HEALTH knowingly entered into a series of agreements" with the Physician Entities and "SUTTER HEALTH knew it was in violation of the AKS and still knowingly continued to submit tainted ineligible claims for reimbursement to the Government in violation of the FCA and CFCA."  (*E.g.*, SAC ¶¶ 101, 135.)

The Sutter Health Entities did not raise this argument in the prior motion to dismiss, and Relator contends it is untimely per Federal Rule of Civil Procedure 12(g)(2).  (Rel.'s Opp'n at 4-5.)  "Rule 12(g)(2) provides that a defendant who fails to assert a failure-to-state-a-claim defense

United States District Court
Northern District of California

1    in a pre-answer Rule 12 motion cannot assert that defense in a later pre-answer motion under Rule

2    12(b)(6) . . . ."  *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017).  The Ninth

3    Circuit, however, has "been very forgiving of a district court's failure to follow Rule 12(g)(2),"

4    reasoning that Rule 12(g)(2) must be read in light of Rule 1's directive that the Federal Rules be

5    construed to "secure the just, speedy, and inexpensive determination of every action and

6    proceeding."  *Id.*  Thus, while "Rule 12(g) technically prohibits successive motions to dismiss that

7    raise arguments that could have been made in a prior motion . . . courts faced with a successive

8    motion often exercise their discretion to consider new arguments in the interests of judicial

9    economy."  *Banko v. Apple, Inc.*, Case No. 13-cv-2977-RS, 2013 WL 6623913, at *2 (N.D. Cal.

10   Dec. 16, 2013) (*quoted in In re Apple iPhone Antitrust Litig.*, 846 F.3d at 319).

11          In light of the Ninth Circuit's approach to successive motions, the Court will adjudicate

12   this issue.  Otherwise, the Sutter Health Entities would presumably file an answer asserting the

13   same defense, before filing Rule 12(c) motions in which "the parties would repeat the briefing

14   they have already undertaken, and the Court would have to address the same questions in several

15   months."  *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164, 1175 (C.D. Cal.

16   2011) (*quoted in In re Apple iPhone Antitrust Litig.*, 846 F.3d at 318-19).  This would be "contrary

17   to the direction of Rule 1."  *In re Apple iPhone Antitrust Litig.*, 846 F.3d at 318.  Further, there is

18   no evidence that the Sutter Health Entities' failure to raise this argument in the prior motion to

19   dismiss was for the purpose of delay.

20          On the merits, Relator argues that the Court "already addressed th[is] issue, expressly

21   recount[ing] the relationship of each Sutter Entity to the other Defendants, and determin[ing] that

22   each relationship was adequately pled."  (Rel.'s Opp'n at 5.)  The Court did no such thing,

23   precisely because the argument had not been raised.  Instead, the Court described the role of the

24   Sutter Health Entities *collectively*, not as individual entities.

25          While Relator failed to provide *any* information as to the role of each Sutter Health Entity

26   in her opposition, the Court finds that the operative complaint sufficiently describes the role of

27   certain Sutter Health Entities.  Specifically, Defendant Sutter Valley Hospitals entered into the

28   contracts with SCSMG, Liu, and CEPMG, which are the basis of the fraud claims in this case.

(*See* SAC Exhs. 1-2, 4-6, 8-9, 12, 15, 38, 41-42.)  Defendant Sutter Valley Hospitals also entered into a contract with Defendant Sutter Valley Medical Foundation, which in turn entered into the medical directorship agreement with Sutter Medical Group.  (*See* SAC Exhs. 24, 25.)  Defendant Bay Hospitals entered into the challenged contracts with East Bay Cardiac and BASS.  (*See* SAC Exhs. 28-33.)  Further, Relator explains that Sutter Valley Medical Foundation is the entity that actually bills Medicare for services, and that it contracts with various medical groups, including SCSMG and Sutter Medical Group, to obtain physician services.  (SAC ¶¶ 120, 152, 155.)  Thus, Relator explains which of these entities entered into challenged financial arrangements, submitted claims, and contracted for services.

The operative complaint, however, does not appear to explain the roles of Defendants Sutter Health or Sutter Bay Medical Foundation.  The operative complaint also does not describe how these two Defendants are connected to the other Sutter Health Entities or if they had control over the other Sutter Health Entities.[4]  Thus, the Court cannot find that these two Defendants committed actions that are the basis for liability, or that they are liable for the actions taken by the other Sutter Health Entities.  (*See* Sutter Health Mot. to Dismiss at 9-10.)  Accordingly, the Court finds that dismissal of Defendants Sutter Health and Sutter Bay Medical Foundation are warranted.  As Relator stated at the hearing that she is able to provide each individual entity's role and relationship with other entities, the Court will give Relator one chance to amend.

**B.    Submitted Claims**

Next, the Sutter Health Entities argue that Relator makes no allegations of claims submitted to federal payors arising from the relationship between the Sutter Health Entities and the Physician Entities other than SCSMG.  (Sutter Health Mot. to Dismiss at 7.)  Relator, however, alleged that the Sutter Health Entities "submitted tainted illegal claims for reimbursements to Government Payers in violation of the FCA and CFCA" as to each of these relationships.  (*See* SAC ¶¶ 157, 169, 184, 196, 216.)

To the extent the Sutter Health Entities are arguing that Relator did not identify a *specific*

---

[4] Indeed, at the hearing, Plaintiff appeared to confuse Sutter Bay Medical Foundation with Sutter Valley Medical Foundation.

claim, the Court previously explained that "[t]he United States or relator does not need to point to a specific referral or claim for designated health services to meet his burden at the pleading stage." (Dismissal Order at 19 (quotation omitted).)  Rather, "it is sufficient to allege particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 989-99 (9th Cir. 2010) (quotation omitted).  Thus, the issue is not whether Relator identified a specific claim, but whether Relator has sufficiently alleged a scheme to submit false claims.  The Court previously found sufficient allegations as to the relationships between the Sutter Health Entities and SCSMG, East Bay Cardiac, and Liu.  (*See* Dismissal Order at 15-21, 24-27.)  The Court will discuss the sufficiency of the allegations as to the relationships between the Sutter Health Entities and Sutter Medical Group, BASS, and CEP below.

### C.   Conspiracy

The Sutter Health Entities argue that Relator has failed to allege her conspiracy claims. "To state a claim for conspiracy under the FCA, a plaintiff must show that (1) the defendant agreed with one or more persons to get a false or fraudulent claim allowed or paid by the United States; (2) one or more conspirators performed any act to effect the object of the conspiracy; and (3) the United States suffered damages as a result." *United States v. Vandewater Int'l, Inc.*, Case No. 17-cv-4393-RGK-KS, 2019 WL 6917927, at *5 (C.D. Cal. Sept. 3, 2019).

The Sutter Health Entities assert there are insufficient allegations that any Defendant made an agreement to violate the FCA.  (Sutter Health Mot. to Dismiss at 11.)  At the hearing, the Sutter Health Entities argued that Relator cannot simply allege contractual agreements that result in problematic claims, but must allege that Defendants entered into an agreement to violate the FCA. Here, however, Relator asserts that Defendants knew the compensation arrangements were illegal. (*See* SAC ¶¶ 135-36.)  Thus, Relator is effectively alleging that by entering into compensation arrangements that Defendants knew were illegal, Defendants agreed to violate the FCA.  This goes further than simply alleging that Defendants entered into an agreement that happened to result in an illegal claim; rather, Relator is alleging that the illegal claim was the very intent of the agreement. *Contrast with Lesnik v. Eisenmann SE*, Case No. 16-cv-1120-LHK, 2018 WL

7

4700342, at *8 (N.D. Cal. Oct. 1, 2018) (dismissing conspiracy claim where the plaintiff only alleged false statements made by one of the defendants, and alleged no agreements between that defendant and the other defendants); *United States ex rel. Marion v. Heald College, LLC*, Case No. 12-cv-2067-PSG, 2015 WL 4512843, at *4 (N.D. Cal. July 24, 2015) (dismissing conspiracy claim where the plaintiff did not allege an agreement between the defendants to violate the FCA).

### D.   Adequate Allegations of Fraud

#### i.   Sutter Medical Group

Relator alleges that on March 1, 2013, Sutter Medical Foundation entered into an agreement with Sutter Medical Group, in which Dr. David K. Roberts would serve as a regional medical director.  (SAC ¶ 152.)  Dr. Roberts was to work a minimum average of 87 hours per month, and would be paid $296/hour.  (SAC ¶ 152.)  A May 1, 2014 agreement required Dr. Roberts to work an average of 121 hours per month for $270/hour.  (SAC ¶ 152.)  While performing his services under the agreements, Dr. Roberts was not to bill or assert any claim for payment against any patient or payer for services provided.  (SAC ¶ 154.)

Between December 2013 and June 2014, Dr. Roberts performed over 130 hours of medical director services per month.  (SAC ¶ 153.)  At the same time, Dr. Roberts continued to bill Medicare hundreds of thousands of dollars.  (SAC ¶ 154.)  Relator asserts that Dr. Roberts could not have performed all of that work if he actually worked all of the hours he claimed to be performing medical director services.  (SAC ¶ 154.)

##### a.   Motion to Strike

As an initial matter, Sutter Medical Group moves to dismiss Exhibit 27 and allegations based on Exhibit 27.  (SMG Mot. to Strike at 1.)  Exhibit 27 is a printout from a Wall Street Journal website, which lists Medicare's payments to Dr. David K. Roberts from 2012 to 2015. (SAC, Exh. 27.)

Federal Rule of Civil Procedure 10(c) provides: "A copy of any written instrument which is an exhibit to a pleading is a part hereof for all purposes."  A written instrument, in turn, "is a document evidencing legal rights or duties or giving formal expression to a legal act or agreement, such as a deed, will, bond, lease, insurance policy or security agreement."  *DeMarco v. DepoTech*

8

*Corp.*, 149 F. Supp. 2d 1212, 1220 (S.D. Cal. 2001) (quotation omitted). When striking exhibits such as expert affidavits and declarations, courts have explained that such exhibits are "evidence submitted to bolster allegations contained in the [c]omplaint," rather than exhibits that form the basis of the claims alleged in the complaint. *See Montgomery v. Buege*, No. CIV. 08-385 WBS KJM, 2009 WL 1034518, at *4 (E.D. Cal. Apr. 16, 2009) (striking declarations that were "in the nature of evidence submitted to bolster allegations contained in the Complaint"). To allow such exhibits would "needlessly complicate[] challenges to the sufficiency of pleadings," including evidentiary challenges to the exhibits or a need to convert a motion to dismiss into a motion for summary judgment. *Id.* Likewise, courts have found that newspaper excerpts are not written instruments within the meaning of Rule 10(c). *See Mora v. City of Chula Vista*, Case No. 20cv779-GPC(AGS), 2021 WL 1165054, at *8 (S.D. Cal. Mar. 26, 2021) (striking newspaper articles and webpages because they did not constitute documentary evidence or written instruments intended to be incorporated into a complaint).

Here, the Wall Street Journal printout is not a document evidencing legal rights or duties, but rather is evidence that bolsters Relator's claim that Dr. Roberts was billing hundreds of thousands of dollars to Medicare at the same time he was purportedly working over 130 hours of unrelated medical director services per month. Accordingly, the Court grants Sutter Medical Group's motion to strike Exhibit 27.

Striking Exhibit 27, however, does not require the Court to strike allegations based on Exhibit 27. Sutter Medical Group provides no authority to the contrary, and courts have denied motions to strike allegations in a complaint that are related to stricken exhibits. *DeMarco*, 149 F. Supp. 2d at 1222 (striking an expert affidavit but denying a motion to strike the allegations of the complaint that were derived from the expert affidavit); *Neminsky v. Bank of Am. Corp.*, No. CV-14-1196-PHX-GMS, 2014 U.S. Dist. LEXIS 187534, at *8 (D. Ariz. Oct. 9, 2014) (striking an affidavit but taking as true non-conclusory assertions of fact from the affidavit that were pled within the complaint). The Court denies Sutter Medical Group's motion to strike the related allegations in the complaint.

b. Substantive Allegations

9

1    The Court finds that Relator has adequately alleged fraud as to the relationship between the

2  Sutter Health Entities and Sutter Medical Group.  In granting the previous motion to dismiss, the

3  Court explained that it could not infer that Dr. Roberts was unable to maintain a busy medical

4  practice at the same time he was working as a medical director because Relator did not allege the

5  number of hours Dr. Roberts worked as a medical director, only the hours Dr. Roberts *could* bill.

6  (Dismissal Order at 24.)  Further, Relator only focused on Dr. Robert's Medicare billing in 2012,

7  during which there was no medical directorship agreement.  (*Id.*)

8    Here, however, Relator alleges that Dr. Roberts was required to bill an average of  87

9  hours per month under the March 1, 2013 agreement, and 121 hours[5] per month under the May 1,

10  2014 agreement, that Dr. Roberts submitted monthly time reports claiming the hours required by

11  the agreements, and that he was in fact paid for this time.  (SAC ¶ 152.)  Relator further alleges

12  that Dr. Roberts billed over 130 hours per month between December 2013 through June 2014.

13  (SAC ¶ 153.)  During the same months he was spending upwards of 87 to 121 hours a month

14  doing medical director work, Dr. Roberts was also billing hundreds of thousands of dollars to

15  Medicare between 2013 and 2015.  (SAC ¶ 154.)  It can be reasonably inferred that Dr. Roberts

16  did not actually perform those hours of medical director work (approximately 32.5 hours a week

17  between December 2013 and June 2014, with 30.25 hours a week required from May 1, 2014 on)

18  for which he was compensated, while also maintaining a busy medical practice that billed

19  hundreds of thousands of dollars to Medicare, in addition to any work done by Dr. Roberts for

20  *non*-Medicare patients.  Thus, the Court finds Relator has plausibly alleged that this compensation

21  arrangement was problematic, and meant to induce referrals.

22    **ii.   BASS**

23    The Court finds that Relator has again failed to allege fraud as to the relationship between

24

25   [5] The Sutter Health Entities contend that the May 2014 agreement only stated that Dr. Roberts
26  could be paid up to 121 hours per month, not that he had to work 121 hours per month.  (Sutter
    Health Mot. to Dismiss at 13-14; Sutter Health Reply at 7.)  The agreement, however, states that
27  Dr. Roberts "**shall** devote an **average of one hundred twenty-one (121) hours per month**
    performing services described in this Agreement."  (SAC Exh. 24, ¶ c (first emphasis added).)
28  This mandatory language does not suggest Dr. Roberts was not required to work an average of 121
    hours per month.

United States District Court
Northern District of California

1    the Sutter Health Entities and BASS.  Relator alleges that Sutter Bay Hospitals entered into an

2    agreement in which BASS was paid $650 per shift for vascular surgery coverage at the Alta Bates

3    Campus and the Summit Campus.  (SAC ¶ 172, Exh. 32.)  Relator further alleges that in March

4    2014, BASS was paid for 31 shifts at the Alta Bates campus and 31 shifts at the Summit Campus,

5    and that BASS was paid a total of $474,500 ($650 x 2 x 365 days) for vascular surgery call

6    coverage over a full year.  (SAC ¶ 174.)

7         As before, these allegations are insufficient.  Relator appears to be arguing that because

8    this was an "exclusive" arrangement, it was therefore a reward for high referrals.  (SAC ¶ 175.)

9    This alone is not a reasonable inference.  While Relator points to a HHS-OIG Advisory opinion

10   that found "payments by hospitals for on-call coverage **can** be misused to entice physicians to join

11   or remain on the hospital's staff or to generate additional business for the hospital," this mere

12   possibility, without more, is insufficient.  (SAC ¶ 175 (emphasis added).)

13        Further, the Court observes that Relator has not alleged new facts from the prior complaint,

14   and Relator confirmed at the hearing that she has no other facts.  Rather, Relator asserts a new

15   theory of fraud, as Relator previously asserted -- without sufficient facts -- that BASS was being

16   compensated for on-call services that were not provided.  (*See* Dismissal Order at 26.)  Relator

17   also previously alleged that BASS was billing for services despite being paid for on-call coverage,

18   but failed to explain why this was not permissible.  (*Id.*)  These shifting theories strongly suggest

19   that Relator simply does not know why the compensation arrangements between the Sutter Health

20   Entities and BASS constitute fraud, such that amendment would be futile.  Accordingly, the

21   claims regarding BASS are dismissed without leave to amend.

22        **iii.    CEP**

23        The Court finds that Relator has adequately alleged fraud as to the relationship between the

24   Sutter Health Entities and CEP.  Relator alleges that Sutter Valley Hospitals entered into a series

25   of agreements with CEP for emergency department coverage services at Memorial Hospital Los

26   Banos.  (SAC ¶ 198.)  Under these agreements, Sutter Valley Hospitals agreed to pay CEP for

27   CEP's mid-level practitioners working in the emergency department at an hourly rate of $60.33.

28   (SAC ¶ 202.)  Relator asserts that this provided a tangible financial benefit to CEP because such

United States District Court
Northern District of California

11

costs "are normally the responsibility of the physician or the physician's staff." (SAC ¶ 205.) Thus, CEP could bill Medicare and Medicaid for services rendered by the mid-level physicians, which Sutter Valley Hospitals was already covering. (SAC ¶ 205.)

The Court finds these allegations sufficient. The Sutter Health Entities contend that payments for the costs of mid-level practitioners are not unusual or suspect. (*See* Sutter Health Reply at 9.) Again, however, Relator has alleged that these costs are normally borne by the physician, such that payment of these costs *is* unusual. (SAC ¶ 205.) While the Sutter Health Entities may dispute this, the Court must take factual allegations as true. Further, Relator cites to HHS-OIG Advisory Opinion 98-16, which notes that when "a party gives an existing or potential referral source valuable services or goods for free or below fair market    value . . . an inference arises that one purpose of the arrangement is to induce or reward referrals." (HHS Office of Inspector General, Advisory Opinion 98-16 (Nov. 10, 1998), *available at* https://oig.hhs.gov/documents/advisory-opinions/391/AO-98-16.html.) Such is the case here, where Sutter Valley Hospitals is compensating CEP for costs that CEP would normally bear, thus providing it a tangible benefit that creates a financial incentive for CEP to make referrals.

Relator also alleges that Sutter Valley Hospitals agreed to pay CEP a $300,000 disproportionate share subsidy. (SAC ¶ 208.) The stated purpose of this subsidy was to compensate CEP for its treatment of a disproportionate number of hospital patients who lacked a third-party payment source or whose third-party payor reimbursement was insufficient to cover CEP's costs of providing services. (SAC ¶ 208.) Relator also asserts that states and hospitals are subject to audit and reporting requirements in order to receive disproportionate share hospital payments from Medicaid programs. (SAC ¶¶ 209, 211.) Relator alleges, however, that CEP was not required to substantiate the $300,000 subsidy. (SAC ¶ 211.) This allegation alone is insufficient. As the Sutter Health Entities point out (and Relator does not dispute), CEP is required by the compensation agreement to maintain and make available documents and records to ensure that Sutter Valley Hospitals could meet requirements for participation and payment associated with public and private third party payment programs. (SAC Exh. 41 § 8; Sutter Health Mot. to Dismiss at 18.) Thus, if Sutter Valley Hospital was ever audited, it had the ability to ask

1    CEP for substantiation.  While Relator argued at the hearing that Sutter Valley Hospitals paid the

2    subsidy without ever asking for substantiation, Relator does not allege any facts to suggest that

3    this is unusual or improper, *e.g.*, the hospitals always ask for such substantiation before payment.

4    Regardless, the Court finds that Relator has adequately alleged fraud based on the payment to mid-

5    level physicians.

6    **E.    Stark Law[6]**

7        **i.    Referrals**

8        The Sutter Health Defendants argue that Relator fails to allege a Stark Law violation with

9    respect to the compensation arrangements with East Bay Cardiac and CEP because Relator has not

10   alleged a referral of designated health services by the Physician Entity to the hospitals.  (Sutter

11   Health Mot. to Dismiss at 21.)  The Court previously resolved this issue in its order on the prior

12   motions to dismiss, explaining that "[t]he United States or relator does not need to point to a

13   specific referral or claim for designated health services to meet his burden at the pleading stage."

14   (Dismissal Order at 19.)  While representative examples is one way of meeting pleading

15   requirements, "it is sufficient to allege particular details of a scheme to submit false claims paired

16   with reliable indicia that lead to a strong inference that claims were actually submitted."  *Ebeid ex*

17   *rel. United States v. Lungwitz*, 616 F.3d 993, 998-99 (9th Cir. 2010) (quotation omitted).  Here,

18   the Court has found that the compensation arrangements with East Bay Cardiac and CEP were

19   fraudulent, such that any Medicare patient referral from East Bay Cardiac and CEP during the

20   duration of these arrangements would be in violation of the Stark Law.  (*See* Dismissal Order at

21   20, 24-25.)  Relator, in turn, has alleged that referrals were made.  (SAC ¶¶ 100(b), 167, 214.)

22       **ii.    SCSMG**

23       Next, the Sutter Health Entities argue that Relator fails to allege a Stark Law violation

24

25   _____

     [6] In a footnote, the Sutter Health Defendants argue that Relator has failed to allege that no Stark
26   law exceptions apply.  (Sutter Health Mot. to Dismiss at 20.)  Not only is it inappropriate to make
     a substantive argument in a footnote, but the Court already found that the burden is on Defendants
27   to establish an affirmative defense, not on Relator to establish the absence of one.  (Dismissal
     Order at 17-18.)  The Court will not relitigate this issue, nor will it consider arguments made in
28   footnotes.

United States District Court
Northern District of California

between Sutter Valley Hospitals and SCSMG as to alleged referrals by Dr. Longoria prior to 2010 or by Drs. Kincade and Ingram prior to 2012.  (Sutter Health Mot. to Dismiss at 22.)  The Court previously found that Relator had adequately alleged an AKS violation, but that Relator had not alleged a Stark Law violation.  (Dismissal Order at 20-21.)

The Stark Law prohibits a hospital from submitting Medicare claims for services based on patient referrals from physicians who have a "financial relationship" with the hospital.  A financial relationship includes direct compensation arrangements; "[a] direct compensation arrangement exists if renumeration passes between the referring physician . . . and the entity furnishing [designated health services] without any intervening persons or entities."  42 C.F.R. § 411.354(c)(1).  Where a payment is made to a physician organization, however, "a physician is deemed to 'stand in the shoes' of his or her physician organization and have a direct compensation arrangement . . . if [t]he only intervening entity between the physician and the entity furnishing [designated health services] is his or her own physician organization[, and t]he physician has an ownership or investment interest in the physician organization."  42 C.F.R. § 411.354(c)(1).

Applying the regulations, the Court previously found that Relator had not alleged a Stark Law violation because Relator had not alleged a direct compensation arrangement, specifically that the doctors had an ownership or investment interest in SCSMG.  Although Relator now alleges that Drs. Longoria, Kincade, and Ingram did have an ownership interest in SCSMG, the Sutter Health Entities point to the medical director agreements, which state that SCSMG employed these doctors.  (Sutter Health Mot. to Dismiss at 22.)  Thus, the Sutter Health Entities contend that these doctors did not, in fact, have an ownership interest.  As Relator points out, however, a shareholder owner can also be employed by the entity in which he or she has an ownership interest.  (Rel.'s Opp'n at 3.)  Thus, the fact that SCSMG employed these doctors does not necessarily mean the doctors had no ownership interest in SCSMG.  As the Court must accept factual allegations as true, and Relator has alleged that these doctors held ownership interest in SCSMG, the Court finds that Relator has alleged a direct compensation arrangement as to these referrals.

The Sutter Health Entities also contend that Relator cannot allege a direct compensation

14

arrangement between Sutter Valley Hospitals and SCSMG prior to September 5, 2007.  (Sutter Health Mot. to Dismiss at 22.)  Prior to a December 4, 2007 change to the Stark Law regulations, "a physician could avoid creating a 'direct compensation arrangement' simply by making sure that any renumeration was paid to a professional practice rather than to the doctor individually." *United States ex rel. Singh v. Bradford Reg'l Med. Ctr.*, 752 F. Supp. 2d 602, 619 (W.D. Penn. 2010).  The regulations were then modified to add the "stand in the shoes" provision.  The Stark Law regulations, however, include a grandfather clause which provides that the "stands in the shoes" provision "[n]eed not apply during the original term or current renewal term of an arrangement that satisfied the requirements of § 411.357(p) as of September 5, 2007."  42 C.F.R. § 411.354(c)(3)(ii)(A).  42 C.F.R. § 411.357(p), in turn, requires that the compensation received by the referring physician is fair market value for services and items actually provided, and is not determined in a way that takes into account the volume or value of referrals generated by the referring physician.

Relator contends that the grandfather clause does not apply because the compensation arrangements did not satisfy § 411.357, and therefore the "stand in the shoes" provision applies. The Court agrees.  In its prior dismissal order, the Court found that starting in July 2006, the Sutter Health Entities provided free physician assistants to SCSMG to induce referrals.  (Dismissal Order at 16.)  While these physician assistants were prohibited from charging patients or other third-parties for their services, SCSMG billed third-party payers regardless.  (*Id.*)  The provision of free physician assistants which SCSMG could then bill for does not satisfy the fair market value requirement.  Thus, Relator has alleged a direct compensation arrangement prior to September 5, 2007.

### iii.    East Bay Cardiac

The Court previously found that while Relator had adequately alleged an AKS violation as to East Bay Cardiac, Relator had not alleged a Stark Law violation because Relator did not allege that the physicians had an ownership or investment interest in East Bay Cardiac.  (Dismissal Order at 25.)  In the instant motion, the Sutter Health Entities argue that Relator has not alleged a direct compensation arrangement prior to February 4, 2009.  (Sutter Health Mot. to Dismiss at 23.)

15

1    Relator again responds that the grandfather clause does not apply because the compensation

2    arrangements between the Sutter Health Entities and East Bay Cardiac exceeded fair market value.

3    (Rel.'s Opp'n at 11.)

4          In this instance, the Court disagrees with Relator.  In the prior dismissal order, the Court

5    found fraud because the February 2009 agreement represented a twofold increase from the original

6    June 2007 agreement, such that this twofold increase "raises a strong inference of improper

7    compensation, particularly when no additional services are being provided."  (Sutter Health Mot.

8    to Dismiss at 25.)  In other words, it was the increase in the February 2009 agreement vis-à-vis the

9    June 2007 agreement that demonstrated fraud, rather than anything in the June 2007 agreement

10   itself.  Thus, it is not apparent to the Court that the compensation arrangement that existed prior to

11   February 4, 2009 did not satisfy § 411.357(p)'s requirement that the compensation received by a

12   referring physician is of fair market value.  While Relator suggested at the hearing that this

13   increase itself shows that the original agreement was facially unreasonable, the Court finds this is

14   not a reasonable inference.  The agreement could very well have started off as a legal financial

15   arrangement; subsequent actions alone do not necessarily indicate that the original contract was

16   fraudulent.

17         Relator contends that it is Defendants' burden to establish that § 411.57(p) was satisfied,

18   but provides no authority in support.  (Rel.'s Opp'n at 11.)  While Defendants had the burden of

19   establishing affirmative defenses, it is not clear that this is an affirmative defense.  Rather, it is

20   Relator who must allege the existence of a direct compensation arrangement.  Relator has not done

21   so, particularly when it is unclear that the compensation arrangement prior to February 4, 2009

22   constituted a Stark Law violation.

23              iv.    CEP

24         Finally, the Sutter Health Entities argue that because Relator fails to allege fraud as to the

25   arrangements with CEP, Relator's allegations do not support an inference of scienter for her Stark

26   Law allegations.  (Sutter Health Mot. to Dismiss at 25.)  As the Court has found sufficient

27   allegations of fraud, the Court rejects this argument.

28

16

### III.    CONCLUSION

For the reasons stated below, the Court GRANTS the motions to dismiss as to dismissal of Sutter Health and Sutter Bay Medical Foundation.  This dismissal is without prejudice.  Relator may amend her complaint to add further facts regarding the specific roles of these two Defendants only.  Any subsequent motion to dismiss is limited to this issue; the Court **will not** consider any arguments that were previously decided by the Court or that could have been raised in the earlier motions to dismiss.

The Court also GRANTS the motions to dismiss as to (1) dismissal of all claims related to BASS, and (2) the Stark Law claims related to East Bay Cardiac prior to February 4, 2009.  These dismissals are with prejudice.  The Court DENIES the motions to dismiss as to all other claims.  The Court GRANTS the motion to strike as to Exhibit 27, but DENIES the motion to strike as to the allegations in the complaint.

IT IS SO ORDERED.

Dated: November 2, 2021

KANDIS A. WESTMORE
United States Magistrate Judge

United States District Court
Northern District of California

17