UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>SUTTER HEALTH, et al.,<br><br>　　　　Defendants. | Case No. 14-cv-04100-KAW<br><br>**PRETRIAL CONFERENCE TENTATIVE RULINGS** |

## I. MOTIONS IN LIMINE

Relevant evidence is any evidence that has any tendency to make a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Fed. R. Evid. 401. The Court has discretion to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issue, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

| MIL | Motion | Ruling | Reason/Explanation |
|---|---|---|---|
| $R_1$, $D_{1A}$ | **Allow or exclude evidence of prior settlements in this case.** | **GRANT IN PART, DENY IN PART** | The Court will not permit evidence of the settlements in this case because the prejudice from a jury inferring liability based on the settlements outweighs concerns that a jury might speculate about the absence of certain claims or parties as Defendants. The Court notes that it is not inclined to permit argument that the Department of Justice investigated Relator's allegations but declined to intervene in the case now |

| | | | |
|---|---|---|---|
| | | | before the Court.<br><br>The Court will permit evidence of conduct from the Settlement Period because it is relevant to claims made in October and November 2014. It is also relevant to demonstrating an ongoing pattern or scheme, including the routine approval of inadequate medical director time records, Sutter Health's compliance processes, and knowledge. |
| $R_2$ | **Exclude damages testimony of Michael Salve, PhD.** | **DENY** | There is a factual dispute as to whether Ms. DeMario's inclusion of all claims that include a Physician Group doctor constitute a referral. Thus, Dr. Salve's opinion is relevant to the calculation of damages if Relator is unable to provide evidence in support of Ms. DeMario's approach. |
| $R_3$ | **Allow evidence of Sutter Health's OIG Self-Disclosure.** | **GRANT** | The OIG Self-Disclosure is relevant to Sutter Health's knowledge that compensating physicians based on inadequate time sheets was improper. |
| $R_4$ | **Exclude evidence related to 30(b)(6) testimony.** | **DENY** | Untimely discovery dispute. |
| $R_5$ | **Exclude argument, testimony, or evidence that the Government was not harmed because the billed services were medically necessary.** | **GRANT** | Whether a service is medically necessary is not relevant to whether the Government suffered harm or the amount of damages. This ruling does not preclude Defendants from arguing that medical director contracts or other challenged compensation arrangements were FMV or commercially reasonable because the services provided were necessary. |
| $R_6$ | **Exclude argument, testimony, or evidence that Relator improperly obtained documents from Sutter Health.** | **GRANT** | Characterizing Relator's acquisition of documents as improper, theft, or stealing is contrary to whistleblower protections and the requirement that whistleblowers produce evidence to the government when bringing a *qui tam* action. |

| | | | |
|---|---|---|---|
| R7 | **Exclude argument, evidence, or testimony that Sutter Health is a non-profit and/or engages in charitable activities.** | **GRANT IN PART, DENY IN PART** | Defendants may state that Sutter Health is a non-profit entity because it is basic identifying information.  Defendants may not make any arguments based on Sutter Health's non-profit status or charitable works because it disclaimed any intent to make arguments at trial based on its lack of profit motive during discovery. |
| D1B | **Limit Relator's testimony to facts of which she has personal knowledge.** | **GRANT** | Relator states she will not testify to facts outside her personal knowledge. |
| D2 | **Exclude testimony of Stanley Sokolove.** | **DENY** | Mr. Sokolove is not making an improper legal opinion when he opines that CMS would not have reimbursed claims, as he is not opining that the claims violated the AKS or Stark Law.  Rather, he is basing his opinion on improper billing practices.  Further, Mr. Sokolove's opinions are not dependent on the "Incident To" guidance. |
| D3 | **Exclude evidence of executive compensation.** | **DEFER** | Evidence of executive compensation may be relevant if the methodology of compensation is affected by the volume of referrals.  Relator has not explained that this is the case. Absent such a showing, executive compensation will be excluded. |
| D4 | **Exclude reference to criminal statutes.** | **GRANT** | The prejudicial effect of referring to potential criminal violations or liability substantially outweighs the limited probative value of using criminal penalties to demonstrate scienter.  This ruling does not preclude Relator from using the term "incriminating." |
| D5 | **Relator's burden of proof in False Claims Act claims.** | **GRANT** | Relator agrees not to misstate the burden of proof. |
| D6 | **Exclude evidence of unrelated litigation, investigations, or** | **GRANT IN PART, DENY IN PART** | As discussed above in R3, the OIG Self-Disclosure is admissible evidence.  The Court will deny evidence of the remaining litigation, investigations, and |

3

| | | | |
|---|---|---|---|
| | settlement agreements. | | settlement agreements. |
| D7 | **Exclude evidence of claims submitted to Government Managed Care organizations.** | **DENY** | Claims submitted to Government Managed Care Organizations are material to the government's decision to pay the claims. |

## II. EVIDENTIARY ISSUES

### A. Relator's Witness Objections

| Witness | Ruling | Reason/Explanation |
|---|---|---|
| **Dr. George Allman, Dr. Peter Anastassiou, Dr. Leigh Iverson, Dr. Keith Korver, Dr. Raveendra Nadaraja, Dr. Alex Yap, Dr. Ed Yee** | **SUSTAIN** | These doctors are other physicians who East Bay Cardiac asserts assisted in call coverage staffing. These witnesses were not identified until Dr. Stanten's declaration in support of Defendants' motion for summary judgment was filed in May 2024, **after** the fact discovery cutoff. (*See* Defs.' Resp. to Witness Obj. at 4, Dkt. No. 426; Dkt. No. 271 (extending fact discovery deadline to March 15, 2024).) Thus, Defendants' assertion that Relator could have sought additional discovery in response to Dr. Stanten's declaration is incorrect. Further, Dr. Khan's reference to other doctors assisting with call coverage does not put Relator on notice that those doctors would be called as witnesses. |
| **Michael Salve, Ph.D. opinions regarding "designated health services"** | **SUSTAIN** | Although Dr. Salve's September 19, 2024 supplemental report was supposed to respond to Ms. DeMario's May 10, 2024 supplemental report, Dr. Salve included a new opinion regarding whether Ms. DeMario improperly included claims for "designated health services." (Rel.'s Witness Obj. at 2, Dkt. No. 400.) Ms. DeMario's May 10, 2024 supplemental report did not include any new opinions regarding "designated health services," but included updated damages calculations reflecting Sutter Health's list of government and non-government payors and a damages calculation specific to managed care payors. Dr. Salve's opinion regarding "designated health services" is therefore outside the scope of the parties' stipulation, which permitted Dr. |

4

| Witness | Ruling | Reason/Explanation |
|---|---|---|
| | | Salve to respond to Ms. DeMario's May 10, 2024 supplemental report. (Dkt. No. 360 at 1.) |
| **FMV Appraisers** | **OVERRULE** | Relator "conditionally" objects to these witnesses (despite including most of them on her witness list) because Defendants may use these witnesses to present finalized FMV reports. (Rel.'s Witness Obj. at 3.) Relator objects to the extent they testify or present evidence as to finalized FMV reports without an opportunity to introduce draft reports and communications. This is a separate issue from whether the FMV appraisers may be called as witnesses.<br><br>Further, Relator fails to demonstrate prejudice from the failure to disclose, given Relator admits that she had an opportunity to subpoena them. (*See* Dkt. No. 435 n.1.) |

B.   **Defendants' Witness Objections**

| Witness | Ruling | Reason/Explanation |
|---|---|---|
| **"Sutter Health Document Custodian(s)"** | **OVERRULE** | While Relator has not identified the specific custodians, this appears to be a product of Sutter Health's objection to at least 400 internal records produced by Sutter Health during discovery. As Relator points out, this creates a situation where Relator is unable to determine which documents require a document custodian. Accordingly, the Court finds that there is good cause for Relator not to identify these witnesses with more specificity. |
| **Brenna Arceo, Sarah Ham, Bettina Brill** | **SUSTAIN IN PART, OVERRULE IN PART** | Relator agrees to withdraw Ms. Brill.<br><br>First, the Court finds that Ms. Arceo and Ms. Ham are not being called to testify as to attorney-client privileged information. Rather, Relator explains that Ms. Arceo and Ms. Ham are being called to testify about their involvement in Sutter Health's obtaining of FMV appraisals as to financial arrangements with Sac Cardio, including changes that Ms. Arceo requested in the final version. The Court previously found that the draft FMV reports are not protected by attorney-client privilege. (Dkt. |

5

| | | |
|---|---|---|
| | | No. 277 at 2-3.) Relator also seeks to have Ms. Arceo and Ms. Ham testify about e-mails and communications with or forwarded to individuals outside of Sutter Health. It is unclear how such communications would be attorney-client privileged. |
| | | Second, the testimony sought does not violate the September 19, 2024 order, which states: "<u>Sutter Health</u> is precluded from introducing any evidence at trial that its 'rigorous process' included working or consulting with Sutter's legal team." (Dkt. No. 376 at 4.) This does not affect Relator. Further, the evidence at issue does not concern the "rigorous process" or Sutter Health's <u>internal</u> review of the FMV; Relator is seeking to introduce communications between Ms. Arceo and the third-party FMV appraisers. |
| | | Finally, the *Shelton* test is inapplicable because it "was intend[ed] to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy." *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 730 (8th Cir. 2002). Here, Ms. Arceo and Ms. Ham are not counsel of record, but are fact witnesses who are being asked to testify about events that occurred before these litigation proceedings. |
| **Laurie Hanvey** | **OVERRULE** | Relator may testify as to settled conduct. See $R_1$ and $D_{1A}$. |
| **Kathleen McNamara, Jerry Pratt, and Stanley Sokolove** | **OVERRULE** | Defendants object "to the extent" they would testify as to opinions excluded by the Court. Relator states she does not intend to elicit any such testimony, and the Court will not assume otherwise. Thus, this objection is unnecessary. |

### III.  VOIR DIRE

The parties jointly propose 46 oral voir dire questions, and Relator proposes an additional 19 questions (all of which Defendants objects to). (Dkt. No. 389.) Given that trial is set for three weeks -- *including* jury selection -- it is impractical to expect the Court to ask over 40 questions of every juror, which does not take into account the questioning by counsel. Additionally, many of the questions appear to be duplicative; for example, questions 41 through 45 all concern

6

experiences or treatment at Sutter Health, which could conceivably be consolidated to a single question of: "Please describe any experiences you or your close family and friends have had with Sutter Health."

Accordingly, the Court directs the parties to meet and confer as to the voir dire questions, and to jointly propose no more than fifteen oral voir dire questions by **October 29, 2024**. The proposed questions should not be duplicative of those asked on the electronic questionnaire, including the Northern District of California's standard questions and those already proposed by the parties.

## IV.    JURY INSTRUCTIONS

The Court provides the following tentative rulings as to the preliminary instructions and instructions in the course of trial (as needed). The Court notes that it does not give jury instructions regarding types of evidence or stipulations of fact during trial; rather, the Court gives such instructions in its preliminary instructions. The Court will provide further rulings as to final jury instructions after the pretrial conference.

### A.    Disputed Instruction 1A: Duty of Jury (9th Circuit Model Instruction 1.3)

Relator has no objections to the language (which is unchanged from the Model Instruction), but asserts that "reading the entirety of the jury instructions at the outset of the trial will confuse the jury[.]" (Joint Jury Instructions at 4, Dkt. No. 413.) Defendants, in turn, argue that the Court should read all of the jury instructions at the beginning of trial. (*Id.* at 5.)

The Court will not read **all** of the jury instructions at the beginning of trial. The Court will give the standard preliminary instructions (including Model Instruction 1.3), including instructions on the types of evidence, and will give the remaining instructions at the end of trial.

### B.    Disputed Instruction 1: Claims and Defenses

The parties provide competing versions of the jury instruction summarizing the claims and defenses. (Joint Jury Instructions at 6-9.) As an initial matter, the Court does not find it appropriate to use this instruction to explain the law to the jury. Rather, this instruction should provide a concise overview of the case. With that said, the Court considers each of the parties' objections.

1	First, Relator objects to Defendants' inclusion of language concerning the Government's decision not to intervene. (Joint Jury Instructions at 10.) The Court agrees that such language must be removed because the decision to or not to intervene is irrelevant and prejudicial. *See United States ex rel. Kiro v. Jiaherb, Inc.*, No. CV 14-2484-RSWL-PLAx, 2019 U.S. Dist. LEXIS 111680, at *7 (C.D. Cal. July 3, 2019) (evidence of the Government's decision regarding intervention "is irrelevant and would be highly prejudicial in that it could allow the jury to draw the inference that Relator's claim is substantively weak").

Second, the parties dispute whether the jury instruction should be discussing the law, with Defendants seeking to include legal burdens, the elements of a False Claims Act ("FCA") (*i.e.*, scienter, materiality, and presentment), and an explanation of the interplay between the Anti-Kickback Statute ("AKS"), Stark Law, FCA, and California FCA. (Joint Jury Instructions at 10, 11.) Again, the Court does not believe such instructions on the law are appropriate in this instruction. Such instructions will come at the end of the trial.

Third, the parties dispute how materiality is shown. (Joint Jury Instructions at 10, 11.) Relator argues violations of the Stark Law and AKS are inherently material, while Defendants argue that it is not. (*Id.*) Again, such information is not appropriate in this instruction. To assist the parties on other instructions, however, the Court again reiterates that "courts have repeatedly held violations of the AKS and Stark Law to be material often as a matter of law." (3/17/21 Dismissal Order at 33-34, Dkt. No. 131 (collecting cases); Summ. J. Order at 8, Dkt. No. 368.) While Defendants cite *Universal Health Servs., Inc. v. United States (Escobar)*, 579 U.S. 176 (2016), to argue that materiality is a "demanding" element, Defendants cite no authority specific to the AKS or Stark Law. *Contrast with United States ex rel. Longo v. Wheeling Hosp., Inc.*, Civil Action No. 5:19-CV-192, 2019 U.S. Dist. LEXIS 158639, at *24 (N.D. W.Va. Sept. 18, 2019) ("courts have repeatedly held that alleged violations of the Stark Law and AKS were material, including after *Escobar*").

The Court ORDERS the parties to meet and confer, and to jointly draft an appropriate jury instruction no later than **October 28, 2024**. Given the Court's rulings on the parties' objections, the Court expects the parties to cooperate and provide a single instruction.

8

### C.  Stipulated Instruction 5: Questions to Witnesses by Jurors During Trial

The Court will not give this instruction, as the Court does not permit questions to witnesses by jurors.

### D.  Disputed Instruction 11: Expert – State of Mind Offered by Defendants

Defendants propose an instruction stating that expert witnesses cannot offer opinions about an individual or corporation's intent, motives, or state of mind, and that the jury should disregard any such testimony. (Joint Jury Instructions at 21.) Relator objects that the instruction is unnecessary and likely to confuse a jury, explaining: "the Court has already addressed this very issue in its order on *Daubert* motions, and the parties will adhere to this limitation." (*Id.* at 22.)

Because the instruction is unnecessary, the Court will not give this instruction. If Defendants believe an expert witness is providing improper opinions, they should object.

### E.  Disputed Instruction 12: Statistical Evidence

Defendants propose an instruction regarding how to weigh statistical evidence or an expert's opinion about statistical evidence. (Joint Jury Instructions at 23.) Defendants assert that this is necessary because "the jury will be presented with purportedly statistical evidence from Relator's expert Ms. Marianne DeMario." (*Id.* at 23 n.16.) Relator correctly points out that Defendants fail to define what "statistical evidence" is, and it is unclear how Ms. DeMario's report constitutes statistical evidence. Ms. DeMario considered data about the claims submitted by Sutter Health to calculate damages. *Contrast with Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 337-38 (1977) (considering the use of statistics regarding the number of minority employees at a company and the percentage of those employees who had lower paying jobs compared to nonminority employees in determining whether there was evidence of systemwide discrimination). Thus, Defendants have not demonstrated that this instruction is necessary. Moreover, the jury instruction regarding expert testimony generally appears sufficient to explain that expert testimony can be accepted or rejected like any other testimony, with the jury needing to consider the witness's specialized knowledge, skill, experience, training, or education, as well as the reasons given for the opinion and all other evidence in the case. The Court will therefore not give this instruction.

**F.     Stipulated Instruction 15: Evidence in Electronic Format**

The Court does not provide technicians or computers, projectors, and printers to the jurors. The parties will need to be responsible for providing such equipment and technical support, and should modify the instruction accordingly. It is also not clear to the Court why any evidence would need to be provided in electronic format; the parties should address whether there are any electronic exhibits that have not been provided to the Court.

## V.     ADMINISTRATIVE MATTERS

The Court intends to impose time limits on each party at trial. The parties must be prepared to discuss the projected duration of their case, particularly in light of the Court's tentative rulings. These estimates should be realistic, not padded. The Court will **not** extend the duration of this trial; the parties will have three weeks to conduct voir dire and present their case, and the case **will** go to the jury no later than **November 25, 2024**. As trial is scheduled to go from 9:00 a.m. to 3:00 p.m., the Court estimates that there will be approximately five hours of trial time per day after accounting for breaks. Thus, assuming one day for voir dire and time for jury instructions, the parties should assume they have 65 hours in total to present their case, or **32.5 hours** per side.

The parties should be prepared to discuss their technology requirements. The parties are generally required to provide all necessary courtroom technology, such as a projector screen and a projector. The parties should also be prepared to come to the Court before the trial to test technology.

## VI.     HEALTH PRECAUTIONS

In light of the ongoing respiratory virus season, the Court is committed to keeping the parties, counsel, witnesses, and court staff as safe as possible. Anyone experiencing any symptoms of COVID-19 or other respiratory viruses, including fever or cold-like symptoms, are directed to notify the courtroom deputy at kawcrd@cand.uscourts.gov.

IT IS SO ORDERED.

Dated: October 21, 2024

KANDIS A. WESTMORE
United States Magistrate Judge

10